[No. B088795. Second Dist., Div. Five. Oct. 4, 1995.]

MARTIN GLADE, as Trustee, etc., Plaintiff and Respondent, v.
CARLA JEAN GLADE, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Part "1. Appealability of the Order Denying Reconsideration" (and appropriate footnote)
of this opinion is not certified for publication. (See Cal. Rules of Court, rules 976(b) and
976.1.)

## COUNSEL

Trope & Trope, Thomas Paine Dunlap and Donna Beck Weaver for Defendant and Appellant.

Lewis, Goldberg & Ball, Michael L. Goldberg, Rowell & Tessier and John D. Rowell for Plaintiff and Respondent.

## OPINION

**GODOY PEREZ, J.**—Defendant Carla Jean Glade appeals from the entry of summary judgment in favor of plaintiff Martin Glade as trustee of the Martin and Sally Glade Revocable Family Trust, along with the denial of her motion for reconsideration of that judgment. For the reasons set forth below, we hold that the summary judgment should have been denied by the trial court upon reconsideration.

### FACTS AND PROCEDURAL HISTORY

On August 27, 1993, Carla Jean Glade (Carla) filed a petition to dissolve her 10-year marriage to Roger Glade (Roger). Martin and Sally Glade (the Glades) are Roger's parents. On March 18, 1994, Martin Glade, as trustee of the Martin and Sally Glade Revocable Family Trust (the Trust) filed a complaint against Roger and Carla, seeking to foreclose on Roger and Carla's community property residence under the terms of a note and trust deed used to secure a loan by the Trust to Roger and Carla (the foreclosure action).

Carla brought a motion in the family law court on July 8, 1994, to consolidate the foreclosure action with the marital dissolution action because of overlapping issues such as: the community or separate property characterization of the house; right and title to the house; distribution of proceeds from any sale of the house; whether the loan secured by the note and trust deed was in fact a gift; and whether the Trust and the Glades held any community property funds of Roger and Carla which should be offset against amounts owed under the note. It was unclear whether the Trust had ever served Roger with a summons and complaint, Carla contended, and the Glades, by foreclosing on the house and reconveying it to their son Roger afterward, might provide Roger relief which would not otherwise be possible upon division of the community estate.[1]

On August 5, 1994, Carla filed a motion in the family law court to join the Glades, the Trust and the Glade family business as parties to the marital dissolution action. Joinder of the Glades and the Trust was proper, she contended, because they claimed an ownership interest in the community property residence and because Roger testified at his deposition that his father held more than $300,000 derived from the sale of Roger and Carla's community property, monies which should be offset against the sums claimed in the foreclosure action.[2]

On August 16, 1994, the Trust brought a summary judgment motion against Roger and Carla in the foreclosure action. The basis for the motion was simple and straightforward: the Trust loaned Roger and Carla more than $500,000, secured by a note and trust deed on their house; when no payments were made for some time, Carla and Roger reduced their debt by quitclaiming certain real properties to the Trust in 1991; that no further payments were made; and that judicial foreclosure was therefore proper. Carla opposed the motion, contending that the loan was in fact a gift; there were questions as to whether the note was valid; and her marital community estate was entitled to offsets from the Glades or the Trust of not only the more than $300,000 held by the Glades from the unrealized real estate transaction but by a $35,000 bonus from Roger's employer which he gave to his mother. Her opposition included declarations by herself and her lawyer noting that the motions for consolidation and joinder were pending in the dissolution action.

Carla filed an application in the family law court on September 2, 1994, seeking an order to stay further prosecution of the foreclosure action. The

---

[1]The record does not include an answer by Roger to the foreclosure complaint and the Trust concedes in its brief that Roger did not answer and has not appeared in the foreclosure action.

[2]Roger testified at his deposition that he and Carla had been on title to real property located on Coldwater Canyon, that the property had been sold, bringing them more than $300,000 in cash, that the money had been earmarked for an aborted real estate transaction and was held in his father's bank account.

stay was necessary, she contended, because: (1) it would prevent a large community property asset—the family home where she and her two children lived—from being lost to foreclosure; (2) one of her children was autistic and she intended to seek a family home award pursuant to Family Code section 3800 et seq.[3]; (3) the community was owed substantial sums of money by the Glades and the Trust which should be offset from any sums owed under the note and trust deed; and (4) failure to grant a stay would force the needless and duplicative litigation of overlapping issues in the two actions, leading to the possibility of inconsistent results. On September 9, 1994, Carla filed a request that the court in the foreclosure action take judicial notice of her motions for consolidation and joinder.[4]

On September 21, 1994, Judge Michael Pirosh of the family law court denied without prejudice Carla's motion to consolidate the foreclosure action with the dissolution action due to the absence from the files of a jury waiver form. The motion for joinder was denied as to the Glade family business but granted as to the Glades themselves because they claimed or controlled interests subject to disposition by the family law court. The Trust opposed joinder in part on the ground that Carla's claimed offsets were against the Glades in their individual capacities only, not against the Trust. Counsel for Carla argued that the Trust was in essence a legal fiction since the Glades were both the settlors and beneficiaries of the Trust, which was revocable. After hearing argument, the court joined the Trust in the marital dissolution action, then, except for discovery, stayed the foreclosure action. The court did so under Code of Civil Procedure section 526, which relates to the issuance of injunctions, and by analogy to the decision in *In re Marriage of Van Hook* (1983) 147 Cal.App.3d 970 [195 Cal.Rptr. 541] (hereafter *Van Hook*), in order to prevent a multiplicity of actions.[5]

The next day, September 22, counsel for the Trust and for Carla tried unsuccessfully to contact the clerk of the court hearing the summary judgment motion in the foreclosure action and apprise the court of the family law court's ruling. As part of this effort, John D. Rowell, counsel for the Trust, contends that he told Randy E. Bendel, Carla's lawyer, that he (Rowell) believed the stay order was ineffective. Rowell contends he told Bendel that if Bendel tried to present the stay order to the court hearing the summary judgment motion, that he would argue as much to the court. Rowell agreed

---

[3]Family Code section 3800 permits the court to defer sale of the family home and award temporary exclusive use and possession to the parent awarded physical custody of the children, in order to minimize the impact of the dissolution on the welfare of the children. (Fam. Code, § 3800.)

[4]Carla's failure to mention the stay application in this request is unexplained.

[5]While the court's minute order omits the Trust from the joinder order, the transcript from the hearing clearly reflects the court's intent to join the Trust.

to bring a copy of Judge Pirosh's minute order for Bendel to use at the hearing, but claims he told Bendel that he could not present the order, given his belief that the order was invalid. Bendel contends that he and Rowell agreed to notify the court of Judge Pirosh's ruling and that Rowell agreed to bring a copy of the minute order to the hearing.[6]

The Trust's motion for summary judgment was set to be heard at 9 a.m. on September 23. The motion was called for hearing before Judge David M. Schacter at 9:05 a.m. that day. Bendel was not yet present and Rowell, on behalf of the Trust, submitted the matter on the briefs. After Judge Schacter granted the motion and told Rowell to give notice, Rowell told the court that Bendel had just walked in. Judge Schacter said, "Well, I just called it. So that's it." Bendel was five minutes late, he contends, because the courthouse was partially concealed by a construction facade which was in place to protect pedestrians and he drove on past before realizing his error. Even though Rowell knew Bendel intended to appear and even though Rowell knew about the stay order and had a copy of the minute order with him, he failed to alert Judge Schacter to these matters, Bendel contends. The motion was granted and judgment for the Trust was entered that day.

On October 7, 1994, Carla brought a motion pursuant to Code of Civil Procedure section 1008, asking Judge Schacter to reconsider his grant of summary judgment for the Trust. The motion was based on Judge Pirosh's joinder and stay orders and Rowell's failure to advise Judge Schacter of their existence. The Trust opposed the motion on several grounds, the most pertinent of which was the family law court's lack of power to restrain the foreclosure action.[7]

Judge Schacter denied the motion for reconsideration on November 4, 1994. He ruled that because his court was a court of equal jurisdiction with

---

[6]These statements by Rowell and Bendel appear in their respective declarations in connection with Carla's subsequent motion for reconsideration of the summary judgment which gives rise to this appeal. The motion for reconsideration will be discussed in detail *post.*

[7]The Trust also opposed the reconsideration motion based on Carla's failure to submit a written order and Judge Pirosh's failure to require that a bond be posted. The Trust has not addressed either issue on appeal and we therefore deem them waived. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 41 [210 Cal.Rptr. 762, 694 P.2d 1134]; *In re Marriage of Laursen & Fogarty* (1988) 197 Cal.App.3d 1082, 1084, fn. 1 [243 Cal.Rptr. 398].) Even were we to reach the bond issue, we believe that the Trust has waived any objection to the family law court's failure to require a bond. Carla contends in her brief that the Trust has taken no steps to challenge Judge Pirosh's stay order on that ground or any other and the Trust does not dispute or address this point on appeal. The record on appeal does not show any pre- or postorder challenges to the stay and the Trust's failure to timely do so amounts to a waiver of the bond requirement. (Code Civ. Proc., §§ 529, subd. (a), 995.930, subd. (c); *ABBA Rubber Co.* v. *Seaquist* (1991) 235 Cal.App.3d 1, 11-13 [286 Cal.Rptr. 518].) As to the requirement of a written order, a sufficiently detailed minute order will suffice (*People* v. *Gordon* (1951) 105 Cal.App.2d 711, 716 [234 P.2d 287]), but Carla should have the family law court clarify its minute order to include the Trust in the joinder order.

Judge Pirosh's, that "[h]e has no authority over me. It's a court of equal jurisdiction. [¶] The only person that can stay me is the court of appeal. . . ." Judge Schacter also pointed out that the stay order was never served on him, but even if it had been, the stay would be invalid: "I would have called up and said: What are you doing? The answer is basically: No. [¶] Here is the way—I will look at it another way. I am happy to give another judge all my cases. They can have my whole calendar, if somebody wants my cases. So if they ask for it, I will be happy to give it to them. Nobody asked for it. That's the problem we have here. . . ."

Carla appeals, contending that the existence of triable, material fact issues precluded summary judgment in the first instance and that in any event, the family law court's joinder and stay orders barred Judge Schacter from proceeding further with the matter. Because we hold that the latter contention was correct, we need not reach the former.

## DISCUSSION

1. *Appealability of the Order Denying Reconsideration**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *The Principle of Priority of Jurisdiction*

Even though a superior court is divided into branches or departments, pursuant to California Constitution, article VI, section 4, there is only one superior court in a county and jurisdiction is therefore vested in that court, not in any particular judge or department. Whether sitting separately or together, the judges hold but one and the same court. (*Williams* v. *Superior Court* (1939) 14 Cal.2d 656, 662 [96 P.2d 334], hereafter *Williams*.) Because a superior court is but one tribunal, "[a]n order made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . ." (*People* v. *Grace* (1926) 77 Cal.App. 752, 759 [247 P. 585].)

" '. . . It follows, . . . where a proceeding has been . . . assigned for hearing and determination to one department of the superior court by the presiding judge . . . and the proceeding . . . has not been finally disposed of . . . it is beyond the jurisdictional authority of another department of the same court to interfere with the exercise of the power of the department to which the proceeding has been so assigned . . . . If such were not the law, conflicting adjudications of the same subject-matter by different departments

---

*See footnote, *ante*, page 1441.

of the one court would bring about an anomalous situation and doubtless lead to much confusion. [Citation.]' . . ." (*Ford* v. *Superior Court* (1986) 188 Cal.App.3d 737, 741-742 [233 Cal.Rptr. 607], hereafter *Ford,* quoting *Williams, supra,* 14 Cal.2d at p. 662; *People* v. *Madrigal* (1995) 37 Cal.App.4th 791 795-796 [43 Cal.Rptr.2d 498, 500].)

"One department of the superior court cannot enjoin, restrain, or otherwise interfere with the judicial act of another department of the superior court. Even between superior courts of different counties, having coequal jurisdiction over a matter, *the first court of equal dignity to assume and exercise jurisdiction over a matter acquires exclusive jurisdiction.* [Citations.] [¶] A judgment rendered in one department of the superior court is binding on that matter upon all other departments until such time as the judgment is overturned. [Citation.] . . ." (*Ford, supra,* 188 Cal.App.3d at p. 742, italics added; accord, *Elsea* v. *Saberi* (1992) 4 Cal.App.4th 625, 631 [5 Cal.Rptr.2d 742]; *Sandco American, Inc.* v. *Notrica* (1990) 216 Cal.App.3d 1495, 1508 [265 Cal.Rptr. 587].)[9]

". . . '[I]f the principle of priority of jurisdiction over an assigned case . . . is applicable to ordinary departments, it must be even more true of departments exercising distinct subject matter jurisdiction.' . . ." (*Slone* v. *Inyo County Juvenile Court* (1991) 230 Cal.App.3d 263, 269 [282 Cal.Rptr. 126], quoting 2 Witkin, Cal. Procedure (3d ed. 1985) Courts, § 192, p. 218.) ▮ Given the family law court's broad jurisdictional authority where the right to and disposition of community property are concerned, we conclude that Judge Pirosh and the family law court had priority of jurisdiction here.

▮ In *Elms* v. *Elms* (1935) 4 Cal.2d 681 [52 P.2d 223, 102 A.L.R. 811] (hereafter *Elms*), the Supreme Court confirmed that either spouse in a marital dissolution action may join third parties claiming an interest in alleged community property. Moreover, given that a divorce action divides community property and establishes support obligations, third parties claiming an interest in alleged community property have the right to intervene in the

---

[9]The *Williams* court applied this rule in holding that after one department of the Los Angeles County Superior Court issued an order to show cause why a court reporter should not be held in contempt for failing to abide by an earlier order to prepare a trial transcript, another department was without jurisdiction while the contempt proceeding was pending to make an order annulling the order to prepare the transcript. The plaintiffs in *Ford* had been plaintiffs in an earlier action against the Church of Scientology. Judgment was entered for the defendant, including an order denying plaintiffs the return of certain documents. The plaintiffs brought another action seeking an injunction to restrain the first court's judgment. That action was dismissed after a demurrer was sustained without leave to amend and the orders were affirmed because the second court could not have interfered with the first court's order.

action if the spouses do not join them. (*Id.* at p. 683.) Strong policy reasons underlie this rule:

"There are sound reasons in policy why the court in an action for divorce should be permitted to adjudicate the rights of third parties in property alleged by one or both of the spouses to be community property. One of the duties of the court sitting as a court of equity in a divorce proceeding is to make an equitable distribution or award of community property, and to provide for the support of the wife. The court can scarcely make a fair distribution or allotment of parcels of community property without determining what property is community. If property alleged by one of the spouses to be community is in fact in whole or in part claimed by third persons, the court should determine as between the spouses whether the property is community, or owned by third persons. If a third party claimant cannot be made a party and his rights adjudicated, it may be held in a separate action brought by or against such claimant that he is the owner of the property, with the result that a division of all community property made between the spouses in the divorce action, based on a determination that certain property was owned by them, will be rendered inequitable as between them.

"The question as to whether alimony should be awarded and the amount thereof may also depend upon the existence of community property and the disposition made thereof. If the third party claimant is not brought into the divorce action, property treated as community property in the divorce action may subsequently in a separate suit be adjudged as against the spouse to whom it was awarded in the divorce action to be the property of such claimant. This may be followed by an application . . . for an increase in alimony, on the ground that the judgment in favor of the third party removed a source of income. If the rights of the third party are determined in the divorce action, not only will a separate action to determine the rights of such party be avoided, but also a possible proceeding for modification of the alimony allowance will not be necessary." (*Elms, supra,* 4 Cal.2d at pp. 683-684.)

■ Both the Family Code and the California Rules of Court grant the family law court broad powers to determine and characterize community property and join third parties with an interest in such property.[10]

While the spouses are normally the only parties to a marital dissolution action (rule 1211(a)), "a person who claims or controls an interest subject to disposition in the proceeding may be joined as a party to the proceeding . . .

---

[10]All further statutory references are to the Family Code unless otherwise indicated. All further rule references are to the California Rules of Court unless otherwise indicated.

as provided in this chapter. Except as otherwise provided in this chapter, all provisions of law relating to joinder of parties in civil actions generally apply to the joinder of a person as a party to the proceeding." (Rule 1250.)

A person may be joined "if the court finds that it would be appropriate to determine the particular issue in the proceeding and that the person to be joined as a party is either indispensable to a determination of that issue or necessary to the enforcement of any judgment rendered on that issue. . . ." (Rule 1254(a).) "If there is any person who has or claims an interest in the controversy . . . or if there is a person who is acting as a trustee, agent, custodian, or similar fiduciary with respect to any property subject to disposition by the court in the proceeding, or other matter subject to the jurisdiction of the court in the proceeding, the court may grant injunctive or other relief against any such person to protect the rights of either or both of the parties to the proceeding under the Family Code upon application therefor in the manner prescribed by Rule 1225 or, if the court is unable to resolve the issue in the proceeding under the Family Code, the court may reserve jurisdiction over the particular issue until such time as the rights of such person and the parties to the proceeding under the Family Code have been adjudicated in a separate action or proceeding." (Rule 1213.) An application for an injunction against a party or any other person may be granted as provided by Code of Civil Procedure sections 526-529. No memorandum of points and authorities need be filed unless required by the court. (Rule 1225 (a).)

Section 2550 commands the family law court to "divide the community estate of the parties equally." Under section 2551, the court must characterize liabilities as either community or separate while section 2552 requires that the court value the community's assets and liabilities. (§ 2552, subd. (a).) "The court may make any orders the court considers necessary to carry out the purposes of this division." (§ 2553.) The court presiding over a marital dissolution action has jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning the "settlement of the property rights of *the parties*" (§ 2010, subd. (e), italics added), a provision which presumably applies to properly joined third persons.

The court in *In re Marriage of Davis* (1977) 68 Cal.App.3d 294 [137 Cal.Rptr. 265] (hereafter *Davis*), considered whether the family law court presiding over a marital dissolution action had jurisdiction to join the mothers of both spouses based on allegations that they held title to community property for convenience only, then order the sale of that property. Relying on section 2500 (then Civ. Code, former § 4800) and the decision in *Elms, supra,* the *Davis* court held that jurisdiction to do so existed once the

family law court acquired jurisdiction of the marital res and the property owned by the res:

"In our view a divorce court sitting in a dissolution proceeding . . . is a court of limited jurisdiction—that is to say, it can exercise jurisdiction only over the subject matter authorized by law, i.e., the marital res and the property owned by the marital res; and it can acquire jurisdiction of that subject matter only in the manner prescribed by law. But once the court has acquired jurisdiction over the subject matter as defined by law in the manner prescribed by law, ' "it may bring to its aid the full equitable and legal powers with which, as the superior court it is invested" ' and which is necessary or appropriate to the discharge of its jurisdiction over that subject matter. [Citation.]

" . . . . . . . . . . . . . . . . . . . . . . . .

"If it is true as alleged and presumably proved . . . that the [disputed] property was community property of [the spouses] and title was being held by [the mother] 'for convenience only,' then when the court acquired jurisdiction of the marital res and the community property owned by the marital res, it acquired jurisdiction to determine whether or not [the spouse's] allegations were true. The only limitation was the safeguarding of [the mother's] right to due process of law. When she was given notice and a right to be heard, her due process rights were satisfied." (*Davis, supra,* 68 Cal.App.3d at pp. 300-301.)

Section 2045 (Civ. Code, former § 4359, subd. (a)) permits the family law court to issue ex parte temporary protective orders to restrain any person from transferring, encumbering or disposing of community property.[11] The court in *Van Hook, supra,* 147 Cal.App.3d 970, applying rules of statutory construction, found the implied right to convert such a temporary restraining order into a preliminary injunction as per Code of Civil Procedure section 527, even against one spouse's third party creditor which had not been joined in the dissolution action.

The court in *In re Marriage of Schenck* (1991) 228 Cal.App.3d 1474 [279 Cal.Rptr. 651] (hereafter *Schenck*), considered whether an ex-wife who had been awarded an order for deferred sale of the community property home under section 3800 could obtain a writ of execution from a civil law and

---

[11]Civil Code former section 4359 expressly applied the procedural requirements of Code of Civil Procedure section 527 to such orders. That reference was deleted from section 2045, but the same procedures apply in substance under section 240. (See Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (1994 ed.) § 2045, p. 507.)

motion department and force the sale of the home to satisfy the ex-husband's spousal and child support arrearages. Relying on section 2010, subdivision (e) (Civ. Code, former § 4351), and the decision in *Williams, supra,* 14 Cal.2d 656, the court held under principles of priority of jurisdiction that the law and motion department did not err in denying the wife's application for an order of sale of the husband's interest in the home. (*Schenck, supra,* at pp. 1482-1484.)

Finally, the court in *Askew* v. *Askew* (1994) 22 Cal.App.4th 942 [28 Cal.Rptr.2d 284], held that a civil trial court lacked jurisdiction to consider a husband's suit to impose constructive trusts on alleged community real property because a marital dissolution action had already been filed by the wife. After the wife filed for divorce, the husband sued her for fraud, alleging that she lied to him before marriage about the existence of her affection and sexual attraction for him. In reliance on these misrepresentations, the husband alleged that he transferred title to various real properties in both their names as joint tenants and sought damages or recovery by way of constructive trust. Following a jury trial, judgment was entered for the husband, along with the imposition of constructive trusts on certain properties acquired after marriage.

In reversing the judgment, the first part of the court's opinion was devoted to the theory that the husband's suit was a thinly disguised attempt to recover for breach of promise, which had been outlawed under the so-called "anti-heart-balm" statutes. (Civ. Code, §§ 43.4, 43.5.)[12] To the extent that any part of the husband's action might fall outside the ambit of the anti-heart-balm laws, the wife's preexisting marital dissolution action gave the family law court priority of jurisdiction, the *Askew* court held:

"After a family law court acquires jurisdiction to divide community property in a dissolution action, no other department of a superior court may make an order adversely affecting that division. [Citations.] Obviously, the actual division of community property is affected by the characterization of specific assets, so the issue of characterization also reposes in the family law court. [Citation.] [¶] Here, the civil trial court in effect usurped the power and obligation of the family law court to determine the character of the five properties. The civil court's judgment is necessarily predicated on the idea that the five properties which were put into joint tenancy were all [the

---

[12]Civil Code section 43.4 states: "A fraudulent promise to marry or to cohabit after marriage does not give rise to a cause of action for damages." Civil Code section 43.5 states: "No cause of action arises for: [¶] (a) Alienation of affection. [¶] (b) Criminal conversation. [¶] (c) Seduction of a person over the age of legal consent. [¶] (d) Breach of promise of marriage."

husband's] separate property. By imposing trusts on [the wife's] ostensible interests in the five properties, the civil court was removing from the family law court the power to characterize and divide those properties as community. Given that the family law court *already* had subject matter jurisdiction to divide the community property, the civil trial court had no jurisdiction to so act." (*Askew* v. *Askew, supra,* 22 Cal.App.4th at pp. 961-962, italics in original.)

The Trust attempts to distinguish some of these authorities on their facts, but their legal principles and the strong policy reasons which underlie them remain intact. Synthesizing these various authorities, we conclude that Judge Pirosh had authority to stay prosecution of the Trust's foreclosure action and that Judge Schacter lacked jurisdiction to award summary judgment for the Trust and permit foreclosure of Roger and Carla's community property home. As in *Elms,* joinder of the Trust as a third party claiming an interest in alleged community property was clearly proper in order to facilitate the family law court's duty to properly characterize and distribute community property. Once the marital dissolution action was underway, the family law court acquired jurisdiction over alleged community property in the hands of third parties and could properly order their joinder and the sale of that property.[13] (*Davis, supra,* 68 Cal.App.3d at pp. 300-301.) Various provisions of the Family Code and the California Rules of Court give the family law court authority to do so, including the issuance of injunctive relief pursuant to Code of Civil Procedure sections 526 and 527 against parties and nonparties alike. (§§ 2010, subd. (e), 2553; rules 1213, 1225(a), 1250, 1254(a).)

An injunction is proper when "necessary to prevent a multiplicity of judicial proceedings." (Code Civ. Proc., § 526, subd. (a)(6).) An injunction may not be granted, however, "[t]o stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless the restraint is necessary to prevent a multiplicity of proceedings." (Code Civ. Proc., § 526, subd. (b)(1).) Necessarily implied in the latter, we believe, is that a judicial proceeding which was not pending at the commencement of the action in which the injunction is demanded may be stayed. To hold otherwise would render the latter provision mere surplusage, a disfavored result in statutory construction. (See *City of San Jose* v. *Superior Court* (1993) 5 Cal.4th 47, 55 [19 Cal.Rptr.2d 73, 850 P.2d 621];

---

[13]The Trust contends that its foreclosure action in fact had priority, since it was the first action filed between itself and Roger and Carla, while the Trust and the Glades were not brought into the marital dissolution action until after the foreclosure action was filed. The authorities we cite show that priority of jurisdiction in the marital dissolution context relates to the subject matter of such an action—the marital community's property interests—and that such jurisdiction commences once the action is underway. (*Askew* v. *Askew, supra,* 22 Cal.App.4th at pp. 961-962; *Davis, supra,* 68 Cal.App.3d at pp. 300-301.)

*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081]; *Rodriguez* v. *Superior Court* (1993) 14 Cal.App.4th 1260, 1268, 1269 [18 Cal.Rptr.2d 120].)

Judge Pirosh stayed the foreclosure action (except for discovery) to avoid a multiplicity of actions, and the Trust does not contend that his reasoning was improper. Given that the Trust sought to foreclose on Carla's community property house, that Carla intended to seek a deferred sale order under section 3800, and that community property allegedly held by the Trust and the Glades might have to be offset against the amounts due under the note and trust deed, we agree there was a threat of multiple actions and inconsistent verdicts which could undermine the family law court's ability to characterize and dispose of Roger and Carla's community property. Since Carla's marital dissolution action was the first one pending, vesting the family law court with jurisdiction over alleged community property before the foreclosure action commenced, the family law court had priority of jurisdiction and its order staying the foreclosure action was proper.[14] Assuming Judge Schacter had advance knowledge of the stay, he was bound to respect it. (*Engels, Jr., et al.* v. *Lubeck* (1854) 4 Cal. 31, 32-33 [where court of concurrent jurisdiction enjoins parties from prosecuting an action in another court, that injunction restrains the other court on the ground of judicial comity]; accord *Askew* v. *Askew, supra,* 22 Cal.App.4th at pp. 961-962 [after family law court acquires jurisdiction to divide community property, no other department of a superior court may make an order adversely affecting that division and the civil trial court lacks jurisdiction to so act].) Because Judge Schacter did not learn of the stay until after the motion was granted, we turn to his denial of Carla's motion for reconsideration.[15]

---

[14]Further, even if the foreclosure action could be considered as pending before the dissolution action, the family law court properly issued the injunction to prevent a multiplicity of actions. (Code Civ. Proc., § 526, subd. (b)(1).)

[15]In so holding, we reject the Trust's reliance on *Mobil Oil Corp.* v. *Superior Court* (1978) 79 Cal.App.3d 486 [145 Cal.Rptr. 17], for the proposition that priority of jurisdiction cannot arise between different departments of the same superior court. The issue in *Mobil Oil* was whether an unlawful detainer action by the lessor of a gas station against the lessee could be stayed by the civil trial court presiding over the lessee's earlier filed breach of contract action against the lessor. The appellate court's statement concerning the absence of priority of jurisdiction did not consider the competing and overriding interests of a family law court attempting to characterize and distribute community property and is not proper authority for our purposes. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Its decision was also predicated on the legislatively mandated trial preference for unlawful detainer actions. (*Mobil Oil Corp.* v. *Superior Court, supra,* 79 Cal.App.3d at pp. 493-495.) Further, the court cited *Williams, supra,* as an example of situations where priority of jurisdiction between departments of the same superior court might be proper (*Mobil Oil Corp.* v. *Superior Court, supra,* 79 Cal.App.3d at p. 493), and *Williams* served as one of the

### 3. *The Motion for Reconsideration Should Have Been Granted*

■ After an order is granted by a court, any party affected by the order may seek reconsideration based upon a showing of new or different facts. (Code Civ. Proc., § 1008, subd. (a).) The party seeking reconsideration must provide not just new evidence or different facts, but a satisfactory explanation for the failure to produce it at an earlier time. (*Mink* v. *Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [4 Cal.Rptr.2d 195].) If the trial court believes reconsideration is warranted, it can amend, modify or revoke its previous order. (*Ibid.*) A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. (*Robbins* v. *Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 318 [4 Cal.Rptr.2d 649].)

■ The family law court's stay order was issued on September 21, 1994, and the summary judgment motion was set to be heard on September 23. Counsel for both the Trust and Carla agree that they tried unsuccessfully to contact Judge Schacter's court the next day. Rowell, the Trust's lawyer, then promised to bring a copy of Judge Pirosh's minute order to the summary judgment hearing so Bendel, Carla's lawyer, could present it to the court.

The caption on the Trust's summary judgment motion states that the hearing was set for 9 a.m. Bendel arrived just five minutes late, apparently due to construction work which concealed the courthouse as he drove past. When Bendel's presence was called to the court's attention just as the matter was being submitted, the court did not permit Bendel to speak. On these facts, we find a reasonable and credible explanation for Carla's failure to apprise Judge Schacter of the stay order. (See *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 184 [240 Cal.Rptr. 458] [trial court did not permit husband to question his children during hearing on support and custody orders; even though trial court acted properly in doing so, it also properly granted reconsideration and modified its orders because the husband's earlier failure to introduce favorable evidence from his children was not his fault].)[16]

Since Carla properly showed new or different facts, the court should have reached the merits of her motion for reconsideration. Based on our holding

underpinnings for *Schenck*, and *Schenck* was the basis for the decision in *Askew*. (*Askew* v. *Askew*, *supra*, 22 Cal.App.4th at pp. 961-962.)

[16] We do not look kindly on Mr. Rowell's failure to apprise Judge Schacter of the stay order at the hearing on the Trust's summary judgment motion. While he has obligations to his client, Rowell also has certain obligations to the courts and the judicial system. His belief that the stay order was invalid does not permit him to act as final arbiter of its validity and withhold such information from the court. "In presenting a matter to a tribunal, a member: [¶] (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth; [¶] (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law; . . . ." (Rules Prof. Conduct, rule 5-200; *Di Sabatino* v. *State Bar* (1980) 27 Cal.3d 159, 163 [162 Cal.Rptr. 458, 606 P.2d

that the family law court's stay order was proper, it is clear that this error prejudiced Carla. (*Robbins* v. *Los Angeles Unified School Dist.*, *supra*, 3 Cal.App.4th at p. 318.) Upon reaching the merits of her motion, the court should have recognized the validity of the family law court's order and its failure to do so was an abuse of discretion which warrants reversal.

## DISPOSITION

For the reasons set forth above, the orders denying appellant Carla Jean Glade's motion for reconsideration and granting summary judgment for the Trust are reversed. Appellant to recover her costs on appeal.

Grignon, Acting P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied October 24, 1995, and respondent's petition for review by the Supreme Court was denied January 24, 1996.

---

765] [lawyer properly disciplined for failing to tell commissioner at bail hearing that two other bail reduction motions had been made and denied the same day].) No prejudice resulted from Rowell's defalcations, however, since Judge Schacter's comments at the hearing on the reconsideration motion show that he would have granted summary judgment even had he known of the stay order.