Filed 9/4/24  Marriage of Simon CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of NORA WATTS-SIMON and PHILLIP W. SIMON. | D083112 |
| NORA WATTS-SIMON,<br><br>Respondent,<br><br>v.<br><br>PHILLIP W. SIMON,<br><br>Appellant;<br><br>LYNETTA WATTS,<br><br>Respondent. | (Super. Ct. No. 21FL004274N) |

APPEAL from an order and a judgment of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge.  Affirmed.

Phillip W. Simon, in pro. per., for Appellant.

Tanisha Bostick, for Respondents.

# I

# INTRODUCTION

Nora Watts-Simon petitioned the family court for the dissolution of her marriage to Phillip W. Simon. After a contested evidentiary trial, the court found the marital residence was half community property and half the separate property of Nora's aunt, Lynetta Watts.[1] Thereafter, the court granted Nora and Lynetta exclusive use and possession of the residence pending a refinancing or sale of the home.

Proceeding as a self-represented litigant, Phillip appeals the family court's characterization of the marital residence and its order granting exclusive use and possession of the residence to Nora and Lynetta. He claims the court did not have jurisdiction to issue its rulings or to adjudicate the property interests of Lynetta, who was joined to the marital dissolution proceeding as a party. He also argues the court exhibited judicial bias against him and erred in its characterization of the residence and the Veterans Affairs (VA) disability benefits he used as a partial downpayment for the residence.

We reject these arguments and affirm.

# II

# BACKGROUND

A. *Factual Background*

Phillip and Nora married in 2010 and have three children together.

In 2018, Phillip, Nora, and Nora's aunt, Lynetta, bought a home in Carlsbad for $1,340,000. The three buyers all planned to live in the home with the couple's children. Lynetta contributed $361,581 of her separate

---

[1] Because the parties share similar surnames, we refer to them by their first names for purposes of clarity. No disrespect is intended.

property as a downpayment and Phillip provided a downpayment of $6,931, which came from a bank account titled in his name. The bank account included Phillip's VA disability benefits, which he received in connection with his prior military service, as well as other funds. The parties financed the remainder of the purchase by taking out a loan of $999,999.

The parties recorded a grant deed transferring title of the property to Phillip and Lynetta, as joint tenants. An interspousal transfer deed, which purported to transfer Nora's interests in the property to Phillip, was also recorded. The parties did not include Nora on the mortgage loan or the title to the property because she had a low credit score and they hoped to secure a loan with more advantageous terms by omitting her from the transaction altogether.

After the sale closed, the parties took out a $250,000 home equity line of credit and an additional $124,000 home loan. They also refinanced the property three times. When they refinanced the property for the final time in March 2021, they added Nora to the deed and the new mortgage loan.

From the time of the purchase until June 2021, Lynetta made half of the mortgage payments, while Phillip made the other half of the mortgage payments from the bank account that held his disability benefits and other funds. Starting in July 2021, Lynetta made all of the monthly mortgage payments on the property and Nora sometimes contributed $1,000 to the mortgage payments.

In March 2023, the residence was appraised at $2.2 million.

B. *Procedural Background*

Phillip and Nora separated in early 2021 and Nora petitioned the family court to dissolve the marriage in April 2021. At Phillip's request, Lynetta was joined to the proceeding as a party. At some point during the proceeding, Nora and Phillip obtained cross-restraining orders against one

3

another. Nonetheless, all three parties and the children continued to live together in the residence, often acrimoniously.

On July 27 and 28, 2023, the family court held a two-day contested trial to determine the characterization and division of the Carlsbad residence. At trial, Nora and Lynetta were represented by the same attorney and Phillip represented himself in propria persona. The court received testimony from the parties and a certified public accountant proffered as an expert witness by Nora.

At the end of the trial, the court issued a tentative statement of decision characterizing the Carlsbad residence as half community property and half Lynetta's separate property. It also ordered Phillip and the marital community to reimburse Lynetta for various expenses incurred by Phillip. The court permitted the parties to file objections to the tentative statement of decision and all parties did so. In their objections, Nora and Lynetta asked the court to grant them exclusive use and possession of the home under Family Code section 6321.[2]

On October 3, 2023, the court issued its final statement of decision, which largely adopted—and expanded on—the tentative statement of decision. As it did in the tentative statement of decision, the court characterized the Carlsbad residence as half community property and half Lynetta's separate property. In doing so, the court rejected Phillip's claim that he owned half of the property, as his separate property, and Lynetta owned the other half, as her separate property.

In support of its conclusion, the court cited the statutory presumption that property acquired during marriage and before separation is generally community property. Then, it found the disability benefits Phillip received

---

[2]    Further undesignated statutory references are to the Family Code.

during his marriage to Nora were community property; thus, the downpayment contribution from the bank account containing his disability benefits did not entitle him to a pro rata separate property interest in the residence or a right to reimbursement. The court also found Nora's execution of an interspousal transfer deed did not transmute the character of the residence because the interspousal transfer deed was "not specific enough to represent a written transmutation" of the property's character and the totality of the circumstances showed the parties bought the residence "as a joint effort, during marriage, for the family."

The court ordered Nora or Lynetta to refinance or sell the residence within 120 days. It then enumerated a series of credits and reimbursements owed to Lynetta or the marital community, and calculated each party's bottom-line equity interest in the residence as follows: Lynetta–$768,762; Phillip–$40,782; and Nora–$81,426.

After the family court issued the final statement of decision, the parties filed dueling legal briefs concerning Nora and Lynetta's request for exclusive use and possession. Phillip has not included Nora and Lynetta's brief in the record; thus, we are unable to summarize its contents. But, in his legal brief, Phillip claimed he never perpetrated physical or verbal abuse against the opposing parties or the children, Nora violated her restraining order, and the court should order the immediate sale of the residence because Nora and Lynetta would be unable to obtain refinancing for the property.

On November 3, 2023, the court held a contested evidentiary hearing on Nora and Lynetta's request for exclusive use and possession of the property. A court reporter was present for some of the hearing and transcribed some, but not all, of the proceedings.

5

During the transcribed portion of the hearing, Lynetta and Nora both testified that Phillip had filed numerous false police reports against them. After one of these false police reports, Lynetta, Nora, and the children were forcibly evicted from the home for three days. Lynetta and Nora also testified that Phillip played his television loudly nearly every day, yelled and screamed at them, and "constantly" smoked marijuana indoors while the children were home. Lynetta explained that Phillip's behavior caused her anxiety, negatively impacted her at-home work as a clinical scientist, and forced her to take three weeks off of work. Nora testified that his behavior made her anxious and it appeared the children were scared of Phillip.

After the hearing, the family court granted Nora and Lynetta's request for exclusive use and possession of the residence. In its written minute order, the court found Phillip's false police reports had disturbed Nora and Lynetta's peace and the noise and marijuana smoke he created had caused Lynetta to suffer intense anxiety. The court also expressed concern about the children's exposure to Phillip's repeated calls to law enforcement and marijuana smoke.

III

DISCUSSION

Phillip challenges the family court's statement of decision and its order granting exclusive use and possession of the Carlsbad residence to Nora and Lynetta.[3] He contends the court did not have jurisdiction to make these rulings, the court erred in its characterization of the residence and the

---

[3]    In an order dated February 13, 2024, we construed Phillip's notice of appeal from the statement of decision as a premature notice of appeal from a final judgment entered by the family court on February 7, 2024. (See Cal. Rules of Court, rule 8.104, subd. (d)(2).)

6

disability benefits he used as a partial downpayment for the residence, and the court exhibited judicial bias against him.

" 'To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 (*Champir*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "].)

These principles of appellate practice apply to Phillip, even though he is proceeding with this appeal as a self-represented litigant. " '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247; see *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 ["Although [a party] is representing himself in propria persona, he is not exempt from the rules governing appeals."].) "In other words, when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

A. *The Family Court Had Jurisdiction*

Phillip claims the family court did not have jurisdiction to find the marital community owned half of the Carlsbad residence or the disability

7

benefits he used as a partial downpayment for the residence because, according to Phillip, this was his "personal (clear and separate) property." Nora and Lynetta assert the court had jurisdiction to make these rulings. For reasons we shall explain, we agree with Nora and Lynetta.

" ' "[J]urisdiction" to adjudicate matters in a marital case involves three requirements: 1) that the court have authority to adjudicate the specific matter raised by the pleadings (subject matter jurisdiction) [citation]; 2) that the court have "in rem" jurisdiction over the marital "res" to terminate marital status ("in rem" jurisdiction) [citation]; and 3) that the court have jurisdiction over the parties to adjudicate personal rights and obligations (personal jurisdiction).' " (*In re Marriage of Thompson* (2022) 74 Cal.App.5th 481, 487.) Although Phillip often does not specify the type of jurisdiction he believes the court lacked, his arguments seem to suggest he thinks the court did not have subject matter jurisdiction to characterize the property at issue.

Viewing Phillip's argument through this lens, the argument fails. "In a proceeding for dissolution of marriage … the court has jurisdiction to inquire into and render any judgment and make orders that are appropriate concerning [¶] . . . [¶] [t]he settlement of the property rights of the parties." (§ 2010, subd. (e).) In accordance with this grant of authority, "[s]ection 2550 commands the family law court to 'divide the community estate of the parties equally.' Under section 2551, the court must characterize liabilities as either community or separate while section 2552 requires that the court value the community's assets and liabilities. (§ 2552, subd. (a).) 'The court may make any orders the court considers necessary to carry out the purposes of … [D]ivision [7 of the Family Code (titled, "Division of Property")].' " (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1452 (*Glade*).)

These statutes empowered the court to characterize the community, quasi-community, and separate property of the parties and allocate it as warranted. Although Phillip disputes the *correctness* of the court's treatment of certain items of property, the accuracy of the court's rulings—i.e., whether it properly determined the Carlsbad residence was 50% community property and his disability benefits were 100% community property—does not establish that the court lacked the *power* to the make such rulings in the first place. (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1268 ["That the trial court may have wrongly decided the matter does not defeat or limit its jurisdiction or affect the validity or the finality of its judgment."].)

Elsewhere in the jurisdiction section of his opening brief, Phillip claims the family court did not have jurisdiction to join Lynetta, who was not an original party to the proceeding, and to issue orders involving her property rights. This jurisdictional argument fares no better.

"Both the Family Code and the California Rules of Court grant the family law court broad powers to determine and characterize community property and join third parties with an interest in such property." (*Glade, supra*, 38 Cal.App.4th at p. 1451.) Under section 2021, the "court may order that a person who claims an interest in the proceeding be joined as a party to the proceeding in accordance with rules adopted by the Judicial Council pursuant to [s]ection 211." (§ 2021, subd. (a).) The rules of court, in turn, provide that "[a] person who claims or controls an interest in any matter subject to disposition in the proceeding may be joined as a party to the family law case …." (Cal. Rules of Court, rule 5.24.) They grant the parties a right to "apply to the court for an order joining a person as a party to the case who … claims to own any property subject to the jurisdiction of the court in the proceeding." (*Id.*, rule 5.24(c)(1).) Further, they state, "[t]he law applicable

9

to civil actions generally governs all pleadings, motions, and other matters pertaining to that portion of the proceeding as to which a claimant has been joined as a party to the proceeding in the same manner as if a separate action or proceeding not subject to these rules had been filed ….” (*Id.*, rule 5.24(a)(2).)

“ ‘There are sound reasons in policy why the court in an action for divorce should be permitted to adjudicate the rights of third parties in property alleged by one or both of the spouses to be community property. One of the duties of the court sitting as a court of equity in a divorce proceeding is to make an equitable distribution or award of community property, and to provide for the support of the [spouses].  The court can scarcely make a fair distribution or allotment of parcels of community property without determining what property is community.  If property alleged by one of the spouses to be community is in fact in whole or in part claimed by third persons, the court should determine as between the spouses whether the property is community, or owned by third persons.’ ” (*Glade, supra*, 38 Cal.App.4th at p. 1451.)

Invoking these statutory joinder procedures, Phillip moved the family court to join Lynetta as a party to the proceeding and the court granted his motion.  Section 2021, and the rules of court promulgated thereunder, vested the court with the jurisdiction to grant Phillip’s motion and join Lynetta as a party.  Further, once the court joined Lynetta, it was, as previously noted, authorized to “make orders that [were] appropriate concerning the ‘settlement of the property rights of *the parties*’ (§ 2010, subd. (e), italics added), a provision which presumably applie[d] to properly joined third persons.” (*Glade, supra*, 38 Cal.App.4th at p. 1452.)  These provisions gave

10

the court jurisdiction to join Lynetta as a party and make orders concerning the settlement of her property rights.

B. *Phillip Has Not Established That the Family Court's Characterization of the Carlsbad Residence Was Erroneous*

Phillip presents two arguments challenging the merits of the court's determination that the Carlsbad residence was half community property and half Lynetta's separate property, rather than half Phillip's separate property and half Lynetta's separate property. First, he contends Nora executed a valid interspousal grant deed transmuting any interests she had in the residence to him; therefore, the residence was half his separate property, not half community property. Second, he claims the parties used his separate property—specifically, his disability benefits—as a portion of the downpayment for the residence and, by virtue of this fact, he acquired a pro rata separate property interest in the residence. As we shall explain, neither of Phillip's arguments succeeds.

With respect to the first argument, Phillip claims the interspousal grant deed "unequivocally indicates [Nora's] intent to relinquish all her rights to the [Carlsbad] property," and the court thus erred in finding it lacked the specificity needed to transmute the character of the property. To assess this argument, we would need to review and interpret the express language of the interspousal grant deed. (*In re Marriage of Begian & Sarajian* (2018) 31 Cal.App.5th 506, 512 [" 'In deciding whether a transmutation has occurred, we interpret the written instruments independently' "].) However, Phillip has not included the interspousal grant deed in the record, nor has he recited the language of the interspousal grant deed for us. Having failed to provide us with an adequate record, Phillip has waived his argument concerning the effect of the interspousal grant deed. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*)[" 'Failure to

11

provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "]; *Champir, supra*, 66 Cal.App.5th at p. 597.)

Turning to the second argument, Phillip contends he acquired a pro rata separate property interest in the Carlsbad residence because he used his separate property—namely, $6,931 of his disability benefits—to pay a portion of the downpayment for the residence.  The family court determined that Phillip failed to prove he used his separate property for the downpayment.  It found that any disability benefits he received during marriage were community property and, in any event, he procured the downpayment from a bank account containing multiple funding sources, but he did not properly trace the source of the downpayment to separate property funds.

Phillip challenges this finding on grounds that it is not supported by substantial evidence.  We reject this argument.  An appellant raising a substantial evidence challenge "is required to set forth in the appellate brief all material evidence on the point and not merely appellant's own evidence. [Citation.]  A party 'forfeits [] substantial evidence claims by failing to acknowledge evidence favorable to the judgment.' " (*Kim v. TWA Construction, Inc.* (2022) 78 Cal.App.5th 808, 838; *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061 ["On appeal challenging sufficiency of the evidence, appellant's opening brief must set forth all the material evidence on point, not merely state facts favorable to appellant."].)

Phillip's opening brief falls far short of satisfying this standard, as it does not recite *any* facts favorable to the judgment; in fact, it does not have a substantive statement of facts at all.  It also omits virtually all discussion of the actual testimonial and documentary evidence the parties presented at the contested trial.  Along similar lines, Phillip has not supplied us with crucial information about the disability benefits he purportedly used as a partial

12

downpayment for the Carlsbad residence, *supported by proper citations to the appellate record*, including facts such as whether he received the disability benefits before or during his marriage to Nora, the number of years he served in the military before he received the disability benefits, the circumstances under which he separated from the military, whether he elected to receive the disability benefits in lieu of retirement benefits or other benefits, and the method by which the disability benefits were calculated, among other facts.[4] For all of these reasons, Phillip has forfeited his challenge to the family court's finding.[5] (*Champir, supra*, 66 Cal.App.5th at p. 597.)

C. *Phillip Has Not Established That the Court Exhibited Judicial Bias*

Finally, Phillip argues the family court exhibited judicial bias because the court issued a series of rulings against him that, in Phillip's view, were incorrect. He claims the court displayed bias against him because it erred when it joined Lynetta as a party, issued a restraining order against him, allowed Nora and Lynetta to reenter the residence after he called the police on them, and granted Nora and Lynetta exclusive use and possession of the residence. He also asserts the court demonstrated partiality for Nora and

---

[4] "[M]ilitary retired pay based on disability contains two components: (a) compensation to the serviceman for loss of earning power and personal suffering, and (b) retirement support. The latter component, to the extent that it is attributable to employment during marriage, is community property." (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 791.)

[5] Because Phillip has not supplied us with any of this critical information, with supporting record citations, we are likewise unable to assess the merits of his subsidiary claim that a federal law, the Uniformed Services Former Spouses' Protection Act (Title 10 U.S.C. section 1408), barred the family court from characterizing his disability benefits as community property. (*Champir, supra*, 66 Cal.App.5th at p. 597.)

13

Lynetta because it "always … allowed the[m] … to speak" during court hearings, whereas it "refused to let [him] speak during his hearings …."

Phillip has not established that the court exhibited judicial bias. Although Phillip claims the court issued incorrect rulings, he does not direct us to any of these rulings in the record. In fact, based on our review of the record, it appears he has omitted all but one of the allegedly flawed rulings (the exclusive use and possession minute order) from the record. Thus, to the extent he bases his judicial bias argument on these rulings, his argument is forfeited. (*Jameson, supra*, 5 Cal.5th at p. 609; *Champir, supra*, 66 Cal.App.5th at p. 597.) Even if he had included the rulings in the record, "adverse or erroneous rulings, especially those that are subject to review, do not establish a charge of judicial bias." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1112, overruled on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151; *Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795–796 ["numerous and continuous rulings against a litigant, even when erroneous, form no ground for a charge of bias or prejudice"].)

On our own initiative, we also reviewed all of the reporter's transcripts that were included in the record and found no examples of the court depriving Phillip of the opportunity to speak. Far from depriving Phillip of the chance to advance his case, the court went to great pains to explain the procedural posture of the proceeding to Phillip, listened carefully and patiently to the arguments he articulated, and granted him significant leeway to elicit evidence and place matters on the record. In short, "[t]he record contains no hint of judicial bias."[6] (*People v. Rodriguez* (2014) 58 Cal.4th 587, 626.)

---

[6] Apart from attacking the challenged rulings for lack of jurisdiction and judicial bias, Phillip does not raise any specific arguments targeting the order granting exclusive use and possession of the residence to Nora and Lynetta.

14

## IV

## DISPOSITION

The order dated November 3, 2023, and the judgment dated February 7, 2024, are affirmed.  Respondents are entitled to their costs on appeal.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

DO, J.