Filed 12/10/14  Marriage of Aguina and Kang CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of AGUINA AGUINA and CHOONG-DAE KANG. | |
| AGUINA AGUINA, | E058806 |
| Respondent, | (Super.Ct.No. SWD015783) |
| v. | O P I N I O N |
| CHOONG-DAE KANG, | |
| Appellant. | |

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge.

(Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art.

VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of John M. Siciliano and John M. Siciliano for Appellant.

No appearance for Respondent.

1

## I. INTRODUCTION

In this marital dissolution proceeding, appellant Choong-Dae Kang (wife), appeals from the family court's May 14, 2013, order discharging several prejudgment writs of attachment against real properties owned by respondent Aguina Aguina (husband). The writs were issued pursuant to a February 14, 2011, order in *Kang et al. v. Aguina*, Riverside County Superior Court case No. RIC10019528 (the civil case). Kang and several members of her family filed the civil case against Aguina, seeking to recover over $1.2 million in loans that Kang's mother, who died in 2008, allegedly made to Aguina so he could make various real property investments. The civil case was still pending when the family court ordered the writs discharged.

Kang claims the family court lacked jurisdiction to order the writs discharged and violated her due process rights because it ordered the writs discharged without notice to her or an opportunity to be heard. We conclude Kang has failed to demonstrate reversible error. The record does not support Kang's claim that the writs were discharged without notice to her, and affirmatively shows the family court had jurisdiction to order the writs discharged. We therefore affirm the order discharging the writs.

## II.  BACKGROUND[1]

Aguina and Kang were married in 1999.  In September 2008, Aguina petitioned to dissolve the marriage.  Recently, on August 14, 2014, this court affirmed an October 26, 2012, family court order directing Kang to pay $10,000 of Aguina's attorney fees, pendente lite, in the dissolution proceeding.  (*Aguina I.*)  Aguina and Kang have two sons under the age of 18, and have been engaged in protracted litigation in the family court and the civil case.  (See *ibid.*)

In October 2010, Kang, her two siblings, Myung-Ja Kang and Kwang-Sa Kang, and her father, Jae-Sung Kang, filed the civil case against Aguina, seeking damages for his alleged breach of two loan agreements he entered into with Kang's mother in 2004.  According to the complaint, Kang's mother died in January 2008; the plaintiffs were her heirs under Japanese law; and all of the plaintiffs, except Kang, who lived in Murrieta, were residents of Japan.

The complaint in the civil case alleges the two loans—one for $140,000 made on February 12, 2004, and the second for $995,000 made on April 1, 2004—were due in five years and were made for the purpose of "purchasing, improving, developing, and/or sub-

---

[1]  Aguina has not filed a respondent's brief despite having been given 15 days' notice to do so after the time for filing the brief expired.  (Cal. Rules of Court, rule 8.220(a).)  We therefore decide the appeal based on Kang's opening brief, the record on appeal, and any oral argument presented by Kang, as we notified Aguina we would do if he did not file a brief.

We hereby grant Kang's request that we take judicial notice of court records filed in the civil case.  (Evid. Code, §§ 452, subd. (d), 459.)  On our own motion, we take judicial notice of our decision in *In re Aguina Aguina & Choong-Dae Kang* (Aug. 14, 2014, E057770) [nonpub. opn.] (*Aguina I*), and the record in that case.

dividing several parcels of land in the upscale community of La Cresta." The $140,000 loan is referenced in a one-page document written in Japanese and English. In English, the writing states: "This is to certify that we, Choong-Dae Kang and Aguina, have received a loan amount of [$140,000] from Yoshiko Okamoto [Kang's mother]. The terms of this loan is [*sic*] for 5 years with the interest rate of 2% per year. The interest would be paid in US dollars. Should lender require the return of the funds before the term expires, we will do so in a timely fashion." The writing makes no mention of purchasing, improving, developing, or subdividing any real properties. The $995,000 loan was allegedly made pursuant to an oral agreement and is documented in a wire transfer from a bank in Japan to Aguina's "business account" at Temecula Valley Bank in Temecula. Aguina allegedly breached the loan agreements by failing to pay the loan amounts when due, plus interest, and by failing to place Kang on title to real properties he owned in Murrieta, to secure repayment of the loans.

In December 2010, the plaintiffs in the civil case applied for a temporary restraining order, right to attach order, and writs of attachment, seeking to secure the sum of $1,283,016, the amount allegedly due on the loans, through prejudgment attachment levies on five Murrieta real properties Aguina owned. Pending a noticed hearing on the plaintiffs' application for the right to attach order, the judge in the civil case issued a temporary restraining order prohibiting Aguina from transferring his interests in the Murrieta properties.

4

In opposing the application for the right to attach order and writs, Aguina argued the civil department lacked subject matter jurisdiction to issue any right to attach order or writs, and the civil case should be consolidated with the marital dissolution case, because the loans were community debts and the family court had exclusive subject matter jurisdiction over the division of the parties' assets and debts, including "the claims of third parties to the marital assets and debts." Aguina also argued the loans were exempt from attachment because they "primarily related to personal, family or household purposes"; he purchased the Murrieta properties in 2002, before the loans were made in 2004, as part of his and Kang's "personal investment portfolio"; and the loan agreements were invalid and unenforceable.

In reply, the plaintiffs claimed their civil case had nothing to do with the division of any community properties, and Aguina was estopped from claiming the civil department lacked subject matter jurisdiction over their loan claims because he "specifically invoked the jurisdiction" of the civil department when, in December 2010, he sought and obtained an order from the civil department expunging the lis pendens the plaintiffs had recorded against his Murrieta real properties.

On February 14, 2011, the judge in the civil case issued a right to attach order and order for issuance of a writ of attachment against Aguina's five Murrieta real properties. Aguina's motion for reconsideration was denied.

On February 28, 2011, the judge in the civil case overruled Aguina's demurrer to the plaintiffs' second amended complaint, based on lack of subject matter jurisdiction,

5

but stayed the civil case for six months pending a resolution in the dissolution proceeding of whether the loans were separate or community property debts. The stay expired without a ruling, in the dissolution proceeding, of the community or separate property character of the loans. In April 2011, Aguina filed an ex parte application in the civil department to set aside the right to attach order and writs of attachment. His ex parte application was denied.

In May 2011, Aguina filed a motion for attorney fees in the family court, seeking $25,000 in attorney fees to be paid by Kang or "taken out against any of the various items of community property or other disputed property" in the dissolution proceeding. (Fam. Code, §§ 2030, 2032.) In the attorney fee motion, Aguina asked the family court to set aside at least one of the prejudgment writs of attachment so he could sell at least one of the properties and pay his attorney fees, and to consolidate the civil case with the dissolution case, because he and Kang continued to dispute the community or separate property character of the loans from Kang's mother.

In supporting declarations, Aguina claimed he had very little income and was insolvent, but Kang earned substantial income; had "complete control" over the parties' joint businesses and assets; and owned and controlled additional assets in the United States and Japan. Aguina also claimed the five Murrieta properties were of equal value; together, they were worth $1.425 million to $1.875 million; he had "documentation that a significant sum of the loan at issue in the civil case [had] already been repaid"; and Kang was hiding "a substantial amount of assets."

6

On October 31, 2011, the family court signed an order directing Kang and Aguina to immediately list the Murrieta properties for sale and to "cooperate in the removal of any writ of attachment(s) in order for the sale [of the properties] to be consummated." The October 31, 2011, order further directed the proceeds from the first parcel sold to be split evenly between the parties, and the court reserved jurisdiction to characterize the parcels and their proceeds as community or separate properties.[2]

On January 25, 2013, the family court held a hearing on a forensic accounting it had ordered on Kang's income, pursuant to Evidence Code section 730. Kang was not present at the hearing, and was not represented by counsel. The family court ordered her to pay $1,500 in sanctions for her failure to appear. (Fam. Code, § 271.) The family court had ordered the forensic accounting in May 2012 in connection with the parties' respective claims against each other for child and spousal support, and attorney fees. (*Aguina I*, *supra,* at p. 4.) Hearings on these matters had been continued numerous times. (*Ibid*.)

During the January 25, 2013, hearing on the forensic accounting, Aguina's counsel requested and the family court agreed to order the prejudgment writs of attachment against Aguina's real properties discharged, and on May 14, 2013, the family court issued

---

[2] In case No. E044945, Kang and her coplaintiffs petitioned this court for an extraordinary writ reversing the family court's October 31, 2011, order, and their petition was summarily denied. On our own motion, we take judicial notice of the file in case No. E044945. (Evid. Code, §§ 452, subd. (d), 459.)

7

an order discharging the writs.  At the time the writs were ordered discharged, the civil case was still pending in the civil department.

In asking the family court to discharge the writs during the January 25, 2013, hearing, counsel for Aguina explained:

 "[W]e have pled this and it's in the notice to Ms. Kang, but I'll summarize it.  Mr. Aguina owns a series of properties here in California.  They are all in his name and he always alleged them to be his separate property.  Originally Ms. Aguina contended that they were community property and she successfully got a prejudgment attachment on them.  Judge Monterosso, in [the October 31, 2011] order we have pled and shown to the Court with specificity, allowed—prior to the stipulation in front of Your Honor that they were separate property[—] allow[ed] for the properties to be sold, but when the first property was sold, the net proceeds were to be divided evenly. That was under the theory it was a community asset. When we were in front of Your Honor a couple of court appearances ago for other reasons, they stipulated the properties are completely separate, so my client desperately needs to generate money. . . . This is the only way he can do so, and he wants those prejudgment attachments removed completely because it is his separate property, and part of the theory for the attachment was that they're community."

In response, the court observed:

"I know that Mr. Siciliano [counsel for Kang in the civil case] and I believe also Ms. Greer [counsel for Kang in the dissolution proceeding] both indicated that those writs of attachment had been removed.  That was one of their big arguments that the case

8

should stay in civil court . . . and not be heard here, and so I think that they have taken very strongly the position that these are not community assets, that there is no community interest in these assets and the writ[s] of attachment should not be on there.  [¶] . . . [¶] . . . So I'm going to grant that request to remove the writ[s] of attachment[].”

As noted, Kang appeals from the family court's May 14, 2013, order discharging the writs.  (Code Civ. Proc., § 904.1, subd. (a)(5) [“an order discharging or refusing to discharge an attachment” is appealable].)

### III.  ANALYSIS

A.  *The May 14, 2013, Order Discharging the Writs is Presumed Correct*

“The most fundamental rule of appellate review is that an appealed judgment or order is *presumed to be correct*.  ‘All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.’  [Citations.]”  (Eisenberg et al., Cal. Practice Guide:  Civil Appeals and Writs (The Rutter Group 2013) § 8.15, p. 8-5.)

The appellant has the burden of overcoming the presumption of correctness by designating an adequate record on appeal, and demonstrating error based on that record. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362 [absence of adequate record on appeal precludes determination the lower court erred]; *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039 [same].)  The appellant's burden to demonstrate error remains the same when, as here, the respondent does not file a respondent's brief.  (*Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226-227.)

9

On the present record on appeal, even as supplemented by our judicial notice of the records in case Nos. E044945 and E057770,[3] Kang has not shown that the family court's order discharging the writs is invalid or erroneous, based on either a lack of jurisdiction in the family court or a lack of due process notice to Kang.

B. *Kang Has Not Shown Her Due Process Rights Were Violated*

Kang claims the family court violated her due process rights by ordering the writs discharged without notice to her or an opportunity to be heard. (*People v. Hazle* (2007) 157 Cal.App.4th 567, 574-575 ["'[N]otices must be given of any application where the rights of an adverse party are affected, even though no statute . . . specifically requires it'"].) The record does not support this claim.

First, the record shows that Kang had notice of the January 25, 2013, hearing, but chose not to appear or be represented by counsel at the hearing. She was ordered to pay $1,500 in sanctions for her failure to appear. (Fam. Code, § 271.) At the hearing, counsel for Aguina told the court, "*we have pled this, and it's in the notice to Ms. Kang*," before explaining that the writs had not been removed from Aguina's real properties in Murrieta pursuant to the court's October 31, 2011, order, even though the parties had recently stipulated that the real properties were Aguina's separate properties and the community estate had no interest in them, contrary to Kang's previous positions in the civil case and in the dissolution proceeding.

---

[3] See footnotes 1 and 2, *ante*.

The record does not include a copy of any notice of the January 25, 2013, hearing. Nor does the record clearly indicate what the hearing was supposed to concern, if anything, other than a report on the Evidence Code section 730 accounting of Kang's income. But at the hearing, counsel for Aguina indicated Kang was given adequate notice that Aguina would be asking the court to discharge the writs at the hearing, and on this appeal Kang has not shown this was not the case.

Additionally, by its October 31, 2011, order, the family court ordered Aguina and Kang to "cooperate" in removing the writs so the properties could be sold. Kang sought writ review of the order, which this court summarily denied on November 28, 2011. On December 20, 2011, the California Supreme Court denied Kang's petition for review and request to stay the October 31, 2011, order, pending review. The record on this appeal reveals no reason why the writs were not removed pursuant to the family court's October 31, 2011, order, and long before the January 25, 2013, hearing. Kang characterizes the October 31 order as "declin[ing] to directly invalidate the writs," but she has not explained why the writs were not removed pursuant to the order.

Furthermore, the family court ostensibly intended its January 25, 2013, decision and its May 14, 2013, order discharging the writs to serve as a means of enforcing its October 31, 2011, order directing the parties to cooperate in the removal of the writs. Indeed, in agreeing to discharge the writs, the court observed that Kang's attorneys in both the dissolution proceeding and in the civil case had recently indicated to the court that the writs *had already been removed*.

11

C.  *Kang's Jurisdictional Claims Also Lack Merit*

Kang claims the family court lacked jurisdiction to discharge the writs for several reasons:  (1) the family court lacked the "superior jurisdiction necessary to invalidate the orders of another department of the superior court"; (2) the family court did not have subject matter jurisdiction over the breach of contract matter in the civil case; (3) no appeal was taken from the February 14, 2011, right to attach order in the civil case; it was therefore res judicata and not subject to collateral attack in the family court; and (4) the family court did not have personal jurisdiction over her coplaintiffs in the civil case.  (Italics omitted.)  None of these claims have merit.

"In practice, the superior court exercising jurisdiction under the Family Code is known as the 'family court' (or 'family law court').  But there is no separate 'family court' per se.  Rather, 'family court' refers to the activities of superior court judicial officers handling litigation arising under the Family Code.  The 'family court' is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties.'"  (Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2014) ¶ 3:3.10, p. 3-3, quoting *In re Chantal S.* (1996) 13 Cal.4th 196, 200.)

As one court explained:  "Even though a superior court is divided into branches or departments, pursuant to California Constitution, article VI, section 4, there is only one superior court in a county and jurisdiction is therefore vested in that court, not in any particular judge or department.  Whether sitting separately or together, the judges hold

12

but one and the same court.  [Citation.]  Because a superior court is but one tribunal, '[a]n order made in one department during the progress of a cause can neither be ignored nor overlooked in another department . . . .'  [Citation.]"  (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1449.)

"Under the doctrine of *priority jurisdiction*, the first superior court to assume and exercise jurisdiction in the case acquires exclusive jurisdiction until the matter is disposed of.  [Citations.]  The doctrine avoids the risk of simultaneous proceedings or conflicting decisions.  [Citation.]"  (*Levine v. Smith* (2006) 145 Cal.App.4th 1131, 1135; *Glade v. Glade, supra,* 38 Cal.App.4th at p. 1450 ["'[T]he first court of equal dignity to assume and exercise jurisdiction over a matter acquires exclusive jurisdiction.'"  (Italics omitted.)].)  Thus, it is beyond the jurisdictional authority of any other superior court department to interfere with or invalidate a ruling made by the department first to acquire jurisdiction over the matter, until judgment in that matter has become final.  (*Levine v. Smith, supra,* at p. 1135; Hogoboom & King, Cal. Practice Guide:  Family Law, *supra*, ¶ 3:22, p. 3-13.)

Here, the dissolution proceeding was filed in 2008, before the civil case was filed in 2010.  Thus, the family court was the first department of the superior court to assume jurisdiction to determine and direct the disposition of Kang and Aguina's community property estate, and had exclusive jurisdiction, under the doctrine of priority jurisdiction, to rule on matters *concerning* the division and disposition of the parties' community estate.  (*Askew v. Askew* (1994) 22 Cal.App.4th 942, 961 ["After a family law court

13

acquires jurisdiction to divide community property in a dissolution action, no other department of a superior court may make an order adversely affecting that division."].)

By issuing the right to attach order and the order for issuance of the writs on February 14, 2011, the court in the civil case interfered with the family court's exclusive jurisdiction in matters concerning the division and disposition of Kang and Aguina's community estate. At the time the writs were issued, Kang and Aguina were disputing whether the Murrieta real properties were community property assets or Aguina's separate properties. By allowing Kang and her coplaintiffs to encumber the properties with the writs, pending judgment in the civil case, the court in the civil case directly interfered with the family court's exclusive jurisdiction to make orders concerning the disposition, in the dissolution proceeding, of what Kang was then claiming were community assets.

Thus, *the family court was not without jurisdiction* to issue its October 31, 2011, order directing Kang and Aguina to cooperate in the removal of the writs or its May 14, 2013, order discharging the writs—notwithstanding the February 14, 2011, right to attach order and order for the issuance of the writs in the civil case. Our conclusion is unaffected by the fact the civil case was not consolidated with the dissolution case and involved parties other than Kang and Aguina, namely, Kang's coplaintiffs.

14

## IV.  DISPOSITION

The family court's May 14, 2013, order discharging the prejudgment writs of attachment issued on February 14, 2011, in Riverside County Superior Court case No. RIC10019528 (the civil case) is affirmed.  Aguina shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING                         
J.


We concur:

RAMIREZ                 
P. J.

MILLER                  
J.

15