Filed 4/20/23  T.W. v. M.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| T.W.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>M.S.,<br><br>    Defendant and Respondent. | D080542<br><br><br><br>(Super. Ct. No. DN188889) |

APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge.  Reversed.

Family Violence Appellate Project, Cory Hernandez, Arati Vasan, Jennafer D. Wagner, Erin C. Smith; Fenwick & West, Jonathan G. Tamimi and Catherine Kevane, for Plaintiff and Appellant.

M.S., in pro. per., for Defendant and Respondent.

In 2016, plaintiff/mother T.W. and defendant/father M.S. had a son, C. Shortly after C.'s birth, the parties became involved in litigation over custody

and visitation of C. that has led to four separate appeals that are currently pending in this court.[1]

In this appeal, T.W. seeks reversal of the trial court's February 28, 2022 order decreasing M.S.'s monthly child support obligation from $485 to $1. The court issued its February 28 order after receipt of M.S.'s motion for reconsideration (Motion) of its February 10, 2022 order denying such relief.

On appeal, T.W. claims the trial court erred in reducing M.S.'s child support obligation because (1) M.S., as a vexatious litigant, failed to obtain permission before filing his Motion (see Code Civ. Proc., § 391.7, subd. (a)); (2) M.S.'s Motion in any event was untimely, not "based upon new or different facts, circumstances, or law" (see *id.*, § 1008, subd. (a)), and he failed to provide a satisfactory explanation for not providing such earlier, in his original motion; and (3) the evidence on which the court relied was "not credible," as it itself noted in the February 10 and February 28 orders.[2]

---

[1]     See also D079500 (M.S.'s appeal from the June 4, 2021 judgment (Judgment); D079984 (T.W.'s appeal from the June 30, 2021 order denying her request to permanently renew the domestic violence restraining order against M.S. issued on June 20, 2018); and D080174 (M.S.'s appeal from the order denying his own request for a domestic violence restraining order against T.W.).

[2]     T.W. also argued she was denied an opportunity to be heard because the trial court modified the February 10 order without notice. Because we reverse on other grounds, we deem it unnecessary to reach this claim of error.

As we explain, we agree with T.W. that the trial court erred in reducing M.S.'s child support obligation after initially denying this relief in its February 10 order. We therefore reverse the February 28 order.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview

T.W. and M.S. met in 2015. They briefly dated but never married. C. was born in August 2016. T.W. initiated proceedings in this case in September 2016 by filing a petition to establish parental relationship, after M.S. had signed a declaration confirming paternity on the day C. was born. Since C.'s birth, a "long history" of litigation has ensued between the parties.

In June 2018, the court issued a domestic violence restraining order against M.S. protecting T.W. *and* C. for a three-year term. In February 2019, the court found M.S. a vexatious litigant based on his continuous and duplicative filings. And on March 30, 2021, following a four-day bench trial, the court issued a 24-page final statement of decision and ruling (SOD) that was subsequently incorporated into the Judgment. The SOD and resulting Judgment are included in the record in the instant appeal and among other relief allowed visitation to resume between M.S. and C. after a long no-contact period.

### B. Child Support

Pursuant to a request for order filed by T.W. in June 2018, the trial court in October 2018 held a hearing covering various subject matters

---

[3] In reversing, we note that the trial court has continuing jurisdiction to modify a child support order upon a showing of changed circumstances. (See *In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234 (*Williams*); see also Cal. Rules of Court, rule 5.260(c) [the party requesting modification of a prior child support order "must include specific facts demonstrating a change of circumstances"].)

including the parties' child support obligation. At this hearing, as confirmed by the court in a minute order on December 10, it ordered M.S. to pay child support in varying amounts dating back to August 2017; set $4,278 as the amount M.S. owed T.W. in child support arrears from August 1, 2017 to September 30, 2018; and commencing October 1, 2018, set M.S.'s monthly child support payment at $485, and ordered him to pay an additional $100 per month toward the amount in arrears until repaid in full. M.S.'s monthly child support payment of $485 was based on a mandatory, statewide uniform guideline (discussed *post*), with him then reporting monthly income of $2,125.

About a month after the October 2018 hearing, M.S. filed a request for order to reduce his child support obligation. In December 2018, the trial court denied this request, noting M.S. presented no evidence to " 'warrant a reconsideration of the Court's recent order regarding child support' "; and that his request, in any event, was untimely under Code of Civil Procedure section 1008.

In January 2020, M.S. sought a prefiling order to modify his child support obligation. In February 2020 the trial court denied M.S.'s request, noting it already had ruled on this "identical issue"; that M.S.'s renewed request showed why he had been deemed a vexatious litigant; and that his request constituted "harassment."

In the March 30, 2021 SOD, the trial court reserved jurisdiction "over the issue of child support" and directed that the "issues of child support and travel costs" for visitation between C. and M.S. were "to be addressed by the assigned independent calendar department, Department 18." The SOD directed T.W.'s counsel to prepare a proposed judgment incorporating the SOD. In the proposed judgment submitted by counsel, under the heading "Child Support" the court struck paragraph 21 providing: "Child Support

4

remains as previously ordered on October 15, 2018"; but let stand in the Judgment paragraph 22, providing: "The Court reserves jurisdiction regarding child support."

## C. M.S. Renews His Request to Modify Child Support

In October 2021, M.S. again sought a modification of his child support obligation. In support, M.S. submitted an income and expense declaration providing he was a "principal" in a company that, due to the pandemic, was unable to pay him a salary; that he was earning $75 per month by leasing his vehicle to a "corporate entity"; that he then was receiving $100 per month in stimulus payments and had $1,500 in "[c]ash and checking accounts"; that he paid no rent or utilities to the property owner where he and his daughter resided in return for his work and "manual labor" on the property; that he was solely responsible for support of L., with their monthly expenses totaling $75; and that he owed $220,000 in student loans.

Regarding child support and visitation, M.S. noted C. spent about 10 percent of his time with M.S. and the balance with T.W.; that because C. had been allowed to move with T.W. to New York, as provided in the SOD, the court should order her to pay the expenses of bringing C. to San Diego for court-ordered visitation with M.S.; and that because she earned about $9,500 a month, the court also should order her to pay him "no less than $500 per month" per the uniform support guideline.

T.W. responded by submitting a declaration attached to "Item 10" of form "FL-320." However, the declaration she included in the record is *unsigned* and *undated*. In addition, form "FL-320" is not part of the record.

In any event, T.W. alleges in her declaration that M.S. has never paid her any child support for C.; that she earns about $9,500 per month in "gross income"; that because M.S.'s business was unsuccessful and he has an

5

obligation to support C., M.S. needed "to find a new source of income"; that M.S.'s statement he was supporting himself and L. on $75 per month, or "$1.97 per day," was "ludicrous" and "absurd"; that M.S. was hiding his "true income" and income should be imputed to him; and that he should pay for all travel costs for visits with C., inasmuch as he was not paying, and had never paid, child support, in contravention of the trial court's orders.

## D. The February 10 Order and M.S.'s Motion

On February 10, 2022, the trial court issued its order after an unreported January 24, 2022 hearing. As relevant to this appeal, the court denied M.S.'s request to modify his child support obligation, finding he "failed to show a material change of circumstances" that would justify a reduction in the October 15, 2018 child support order. The court also found M.S.'s representation that he earns $75 a month "not credible," as he claimed no expenses for rent, transportation and similar expenses which he stated were supplied to him at no cost; and that M.S. also failed to submit a "Profit and Loss Statement for self-employment income or tax returns" as required by law. On February 14, the clerk of the court served the February 10 order on the parties.

On February 24, M.S. filed his Motion. He argued the trial court already had modified the October 15, 2018 child support order in the SOD when it struck paragraph 21 from the Judgment, leaving only paragraph 22 in which it "reserve[d] jurisdiction regarding child support." M.S. stated he gave T.W. notice of the Motion on February 24 at 5:00 p.m.

## E. February 28 Order Modifying M.S.'s Child Support Obligation

In the February 28 order, the trial court noted M.S. had neither requested nor received permission to file his Motion, which he claimed was for " 'clarification' and for 'reconsideration.' " The court continued,

6

"Nevertheless, the court finds sua sponte that it made its February 10, 2022 [order] by considering [M.S.'s] Request for Order under the standard of whether he showed a material change of circumstances to change the 2018 order. Instead, the court will modify its 2/10/2022 order to set Child Support as follows."

The trial court reiterated that M.S.'s representation he was earning and spending only $75 per month was "not credible"; that he "claim[ed] no expenses for rent, transportation, etc., and claim[ed] that these needs are supplied at no cost to him, or in exchange for bartered physical labor"; and that he failed to comply with the law requiring him to submit a "profit and Loss Statement for self-employment income or tax returns."

However, based on the evidence from the January 24 unreported hearing that M.S. had an "actual timeshare of 1 percent" with C., the trial court revised M.S.'s monthly child support payment obligation to $1 based on calculations in a DissoMaster report it attached to the February 28 order, with this new amount commencing on October 21, 2021, the date M.S. filed his original motion. Although it found M.S. "not credible" in claiming his monthly earning and expenses were only $75, the court nonetheless used this figure in creating the DissoMaster report. The court also refused to impute $2,125 of monthly income to M.S., as previously requested by T.W.

The trial court ruled that M.S. was in arrears $4 for the period between November 1, 2021 and February 1, 2022. It ordered M.S. to pay T.W. this amount, plus $1 more, by March 10, 2022. The court concluded any orders not in conflict with the February 28 order remained in full force and effect, and "reminded" M.S. that as a vexatious litigant, in the future he must receive permission to file any new matters as required by Code of Civil

7

Procedure section 391.7, subdivision (a), including "a motion to reconsider this modification."

## II.  DISCUSSION

### A.    Vexatious Litigants and the Prefiling Requirement

T.W. contends the trial court erred by accepting in the first place M.S.'s Motion and by reconsidering his child support obligation because as a vexatious litigant subject to a prefiling order, he was required to obtain permission before filing the Motion.  We agree.

"The vexatious litigant statutes . . . are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants."  (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169 (*Shalant*).)  Code of Civil Procedure section 391, subdivision (b) defines "[v]exatious litigant" "as a person who has, while acting in propria persona, initiated or prosecuted numerous meritless litigations, relitigated or attempted to relitigate matters previously determined against him or her, repeatedly pursued unmeritorious or frivolous tactics in litigation, or who has previously been declared a vexatious litigant in a related action."  (*Shalant*, at pp. 1169–1170, citing Code Civ. Proc., § 391, subd. (b).)

Code of Civil Procedure sections 391 to 391.6 were enacted in 1963, while Code of Civil Procedure section 391.7, the section at issue in the instant appeal, was added in 1990.  (*Shalant, supra,* 51 Cal.4th at p. 1169.)  " '[T]he Legislature enacted [Code of Civil Procedure] section 391.7 to provide the courts with an additional means to counter misuse of the system by vexatious litigants.  [Code of Civil Procedure] [s]ection 391.7 "operates beyond the pending case" and authorizes a court to enter a "prefiling order" that

8

prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge. [Citation.]  The presiding judge may also condition the filing of the litigation upon furnishing security as provided in [Code of Civil Procedure] section 391.3." (*Shalant*, at p. 1170, citing Code Civ. Proc., § 391.7, subd. (b).)  Code of Civil Procedure section 391.7 is "a powerful new tool designed 'to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs.' " (*Shalant*, at p. 1170.)

Code of Civil Procedure section 391.7, subdivision (c) provides in part that a vexatious litigant subject to a prefiling order "may not file any litigation . . . unless the vexatious litigant first obtains an order from the . . . presiding judge permitting the filing."  Subdivision (d) of this statute provides that, for purposes of the vexatious litigant statute, the term " litigation' includes any petition, application, *or motion* other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order."  (Italics added.)

Turning to the instant case, M.S. filed his Motion without first obtaining leave from the presiding judge, or even the trial court that issued the February 10 order, in contravention of Code of Civil Procedure section 391.7, subdivisions (c) and (d).  Indeed, the court itself in its February 28 order acknowledged that M.S. needed a prefiling order to proceed with the Motion and had not sought permission to file it.

In addition, the record shows the trial court received the Motion on February 28 and "sua sponte" modified the February 10 order that *same* day. As a result, and because the "clerk mistakenly file[d] the litigation without the [prefiling] order" (see Code Civ. Proc., § 391.7, subd. (c)), T.W. was deprived of her statutory right to file and serve a notice "stating that the

9

plaintiff is a vexatious litigant subject to a prefiling order," which notice would have "automatically stay[ed]" the Motion and led to its "*automatic*[ ] dismiss[al]" "unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding . . . judge permitting the filing of the litigation as set forth in subdivision (b)" (*ibid*., italics added).[4]

Even assuming the trial court had discretion to permit the filing of the Motion without M.S. first obtaining a prefiling order, we nonetheless conclude the court erred for the separate reason that the Motion failed to comply with Code of Civil Procedure section 1008. We turn to that issue next.

**B.     Reconsideration**

T.W. first contends the Motion was untimely. We disagree.

Code of Civil Procedure section 1008, subdivision (a) provides in part that a party may file a motion for reconsideration "within 10 days after service upon the party of written notice of entry of the order." (Code Civ. Proc., § 1008, subd. (a).) Under Code of Civil Procedure section 1013,

---

[4]     Subdivision (b) of Code of Civil Procedure section 391.7 provides: "The presiding . . . judge shall permit the filing of that litigation only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. The . . . presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3." (Code Civ. Proc., § 391.7, subd. (b).)

10

subdivision (a), service of an order by mail extends the 10-day period by five calendar days.[5]

In the instant case, the clerk of the trial court served the February 10 order on the parties on February 14. M.S. filed his Motion on February 24, within 15 days from the date of service. Thus, his Motion was timely.

But that does not end our analysis. T.W. also contends the Motion failed to comply with other requirements of Code of Civil Procedure section 1008. We agree.

A party effected by an order granted by the court may seek reconsideration of the order based *only* on "new or different facts, circumstances, or law." (Code. Civ. Proc., § 1008, subd. (a); *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 771 (*Crotty*) ["section 1008 gives the court *no authority* when deciding whether to grant a motion to reconsider to 'reevaluate' or 'reanalyze' facts and authority already presented in the earlier motion" (italics added)].) "The party making the application shall state by affidavit what application was made before, when and to what judgment, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown." (Code. Civ. Proc., § 1008, subd. (a).)

---

[5] Subdivision (a) of Code of Civil Procedure section 1013 provides in part that in "case of service by mail," "[s]ervice is complete at the time of the deposit, but any period of notice and any right or duty to do any act or make any response within any period or on a date certain after service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California." (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022), ¶ 9:326.1 [noting the "10-day deadline for seeking reconsideration is extended under [Code of Civil Procedure section] 1013 for service by mail"].)

11

Here, based on our independent review of the Motion, we conclude M.S. failed to offer "new or different facts" and/or "circumstances" in his request for reconsideration of the February 10 order.[6] (See Code Civ. Proc., § 1008, subd. (a); *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 (*Herr*) [facts of which movant was aware at time of original ruling are not "new or different" within meaning of statute].)

Indeed, in his original filing on October 5, 2021, M.S. referenced paragraph 22 of the Judgment, noting the "[r]eason[ ]" he was entitled to "relief" for child support was "to be addressed by the assigned independent calendar department, department 18 (see pg[.] 24 of [the SOD], filed March 30, 2021)," after the trial court struck paragraph 21 of the proposed judgment. But as we have noted, M.S. relied on these *same* facts and circumstances in seeking reconsideration of the February 10 order. And he admitted as much in his Motion when he stated, "On January 24, 2022 hearing[,] *I presented this information* to Judge Torres and he refused to look at it." (Italics added.)

We thus conclude the trial court abused its discretion by considering M.S.'s Motion when he presented no "new or different facts" or "circumstances" in support. (See Code Civ. Proc., § 1008, subd. (a); *Crotty, supra,* 50 Cal.App.4th at p. 771; *Herr, supra,* 174 Cal.App.4th at p. 1468; see also *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 [a trial court's ruling on a reconsideration motion is reviewed under the abuse of discretion standard].)

---

[6] In his Motion, M.S. did not assert any "new law" warranting reconsideration of the February 10 order. (See Code Civ. Proc., § 1008, subd. (a).)

Finally, when M.S. filed his original motion on October 21 he clearly was aware of the facts and circumstances concerning child care and paragraphs 21 and 22 of the proposed judgment. Assuming arguendo they were "new or different" facts or circumstances (despite our conclusion otherwise), M.S. failed to give a "satisfactory explanation" why he did not present them earlier in his original motion. (See *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457 [a party seeking reconsideration "must provide not just new evidence or different facts, but a satisfactory explanation for the failure to produce it at an earlier time"]; *Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1342 [same].) His failure to satisfactorily explain why he waited to provide these allegedly "new or different" facts or circumstances provides a separate basis for reversal of the February 28 order.

## C.  Child Custody

As we have noted, in modifying the February 28 order, the trial court recognized M.S. was a vexatious litigant and had failed to obtain a prefiling order for his Motion; and which Motion we also have determined did not comply with Code of Civil Procedure section 1008. The court nonetheless "sua sponte" reduced M.S.'s child support obligation. T.W. separately contends this was error because in so doing the court relied on evidence it found "not credible." We agree.

"The duty of a parent to support the parent's child or children is a fundamental parental obligation." (*Moss v. Superior Court* (1998) 17 Cal.4th 396, 405.) California has established a mandatory, statewide uniform guideline to determine court-ordered child support. (See Fam. Code, §§ 4050–4076.) "[T]he uniform guideline statutes require that, in determining the appropriate amount of child support (whether pendente lite, permanent, or on a request for modification of an existing order), all

California courts must adhere to the guideline formula." (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1013.)

Courts must adhere to certain principles when calculating child support, including: "A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life" (Fam. Code, § 4053, subd. (a)); "Both parents are mutually responsible for the support of their children" (*id.*, subd. (b)); "The guideline seeks to place the interests of children as the state's top priority" (*id.*, subd. (e)); and "Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children" (*id.*, subd. (f)).

Family Code section 4055 sets out the mathematical formula to be applied to determine each parent's monthly "net disposable income" for purposes of the guideline. (Fam. Code, § 4055, subd. (b)(2).) Because this section "involves, literally, an algebraic formula," trial courts use the DissoMaster computer program to calculate the guideline child support. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 523–524, fn. 2.) This calculation is presumptively correct. (Fam. Code, § 4057, subd. (a); *In re Marriage of De Guigne* (2002) 97 Cal.App.4th 1353, 1359.)

The statutory scheme also permits a trial court to modify or terminate a child support order "at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a).) A party seeking modification of a child support order has the burden to " 'introduce admissible evidence of changed circumstances.' " (*Williams, supra,* 150 Cal.App.4th at p. 1234; see Cal. Rules of Court, rule 5.260(c) [the party requesting modification of a prior child support order "must include specific facts demonstrating a change of circumstances"]; *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054

["The party seeking the modification bears the burden of showing that circumstances have changed such that modification is warranted."].)

Turning to the instant case, the trial court in its February 28 order repeated its conclusion from the February 10 order that M.S.'s representation he was supporting himself and his daughter on $75 per month was "not credible." The court in both orders noted this amount "happen[ed] to coincide with his listed monthly expenses of $75.00 (consisting of $60 for groceries and household supplies and $15.00 for telephone, cell phone and email)." The court nonetheless relied on the $75 figure when it generated the DissoMaster report attached to the February 28 order, and ruled M.S.'s child support should be reduced accordingly to $1 starting from the date of his original filing of the motion.

Because the trial court found this evidence "not credible," we conclude there is no substantial evidence to support the DissoMaster input data that M.S.'s monthly income was $75, which report in turn was the basis for the court to reduce M.S.'s child support obligation. For this separate reason, we reverse the February 28 order.

### III.  DISPOSITION

The February 28 order is reversed.  The parties to bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.