Filed 1/23/25  Marriage of Daly and Zhang CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Marriage of BRIAN DALY and HONG LU ZHANG. | B336657 |
| | (Los Angeles County Super. Ct. No. BD591027) |
| BRIAN DALY, Petitioner, v. HONG LU ZHANG, Respondent; EVIE P. JEANG et al., Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia Nieto and David I. Wasserman, Judges.  Affirmed.

Gemmill, Baldridge & Yguico and Carlos V. Yguico for Appellants Evie P. Jeang and Ideal Legal Group.

Provinziano & Associates and Alphonse F. Provinziano for Petitioner Brian Daly.

Salisbury, Shaw, Lee & Tsuda and Lee W. Salisbury and Jason Jen-See Lee for Respondent Hong Lu Zhang.

_____

## INTRODUCTION

This marital dissolution action between Hong Lu Zhang and Brian Daly took a bad turn, but not because of anything either of them did.  As part of their separation, Zhang and Daly sold their family residence and agreed Daly's attorneys, Evie P. Jeang and her law firm Ideal Legal Group, would hold the sale proceeds (approximately $4.8 million) in the firm's client trust account until Zhang and Daly finalized their property settlement.  Years later, Zhang discovered Jeang misappropriated more than $2.5 million of the sale proceeds.

Zhang filed a "complaint in joinder" against Jeang in the marital dissolution action and sought an accounting and a constructive trust.  After a trial on the complaint in joinder (at which counsel for Jeang presented no defense and made only one objection), the court ruled Jeang "committed fraud and malfeasance" and awarded Zhang and Daly approximately $2.5 million in damages, $1.6 million in prejudgment interest, plus attorneys' fees and costs.

2

Jeang appeals from the judgment.  She has forfeited most of her arguments, however, by failing to raise them in the family court.  Jeang's remaining arguments lack merit.  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Daly filed a petition for marital dissolution in 2013.  Zhang and Daly sold the family home in 2015, and the sale yielded net proceeds of $4,831,126.  Zhang and Daly agreed Jeang would hold the sale proceeds in her firm's client trust account until Zhang and Daly finalized their financial settlement.

Jeang received the sale proceeds in September 2015 and placed the funds in a client trust account at Bank of America.  Over the next 20 months, funds were steadily withdrawn from the client trust account, including more than $275,000 in credit card payments, $550,000 in withdrawals, $900,000 in account transfers, and $1 million in checks.  The client trust account was closed in May 2017, and the remaining balance (just over $2.5 million) was withdrawn.

In October 2021 counsel for Zhang asked Jeang for an accounting of the proceeds from the sale of the residence.  Jeang had apparently opened a new client trust account at East West Bank, and Jeang gave counsel for Zhang a redacted document purporting to be a bank statement for that account showing a balance of $4,557,046 as of September 30, 2021.

In February 2022 the court ordered Jeang to make several disbursements from the sale proceeds and to transfer the remaining proceeds to counsel for Zhang.  Jeang did not comply.  In March 2022 the family court ordered East West Bank to transfer $3,976,257 (the minimum amount due Zhang and Daly after accounting for various party- and court-approved

3

disbursements from the sale proceeds) from Jeang's client trust account to counsel for Zhang's client trust account. East West Bank transferred $1,999,750.

In July 2022 counsel for Zhang discovered that the September 2021 East West Bank statement Jeang had provided was forged and that Jeang's client trust account held only $288,560 at the end of September 2021.[1] Counsel for Zhang filed a motion to join Jeang in the dissolution proceedings, arguing Jeang and her law firm were indispensable parties because the court would not be able to identify, locate, and distribute all of the community property unless Jeang and her firm were parties subject to the court's jurisdiction. Zhang alleged in the proposed complaint in joinder that Jeang "diverted, withheld, spent, [stole], misappropriated and/or otherwise converted at least $2,307,375" of the sale proceeds; asserted causes of action for conversion and fraud; requested an accounting and a constructive trust; and sought compensatory and punitive damages.

Jeang opposed the motion for joinder, arguing the family court lacked jurisdiction to adjudicate the tort claims in the proposed complaint in joinder. In response, Zhang withdrew her causes of action for conversion and fraud and her request for punitive damages.

The court granted the motion to join Jeang to the dissolution action, and counsel for Zhang filed the amended

---

[1]  Jeang had also purchased—in cash—a home in South Pasadena in 2017 for $1,398,000, a condominium in San Francisco in 2018 for $780,000, and a home in Las Vegas in 2021 for $359,000. The total cost of these real estate purchases ($2,537,000) is remarkably close to the amount of sale proceeds misappropriated from Jeang's client trust account.

4

complaint in joinder.  Meanwhile, Daly substituted new counsel for Jeang, and Zhang and Daly stipulated the court could award compensatory or punitive damages to Zhang and Daly jointly, to the extent those damages related to community property assets.

The court bifurcated the trial on Jeang's alleged misappropriation of funds.  Daly submitted a trial brief asserting Jeang not only misappropriated the sale proceeds, but also covered up her wrongful conduct by, among other things, refusing to comply with multiple court orders, attempting to dismiss the case without his knowledge, moving to quash subpoenas to East West Bank, and filing a frivolous motion to recuse one of the judges hearing the case.  Daly argued that Jeang, as his lawyer, owed him professional and fiduciary duties, which she breached by misappropriating the sale proceeds and concealing her wrongful conduct.  Citing Civil Code section 3336,[2] Daly asked the family court to rule Jeang wrongfully converted approximately $2 million from Zhang and Daly and to award compensatory damages and prejudgment interest.  Daly also asked the court to impose $50,000 in sanctions against Jeang under Family Code section 271 because of her bad faith litigation conduct.  And Daly filed a brief seeking relief from approximately

_____

[2]    Civil Code section 3336 provides:  "The detriment caused by the wrongful conversion of personal property is presumed to be:  [¶]  First—The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and  [¶]  Second—A fair compensation for the time and money properly expended in pursuit of the property."

5

$53,000 in discovery sanctions the court imposed against him based on Jeang's conduct.

Zhang filed a trial brief, arguing (as Daly had) Jeang misappropriated the sale proceeds. Zhang asked the court to award Zhang and Daly approximately $2.5 million in compensatory damages and to award Zhang attorneys' fees and costs as a sanction against Jeang.

In November 2023 the family court held a trial on the complaint in joinder. The parties (including Jeang) stipulated that the trial could proceed by declaration rather than live testimony and that the court could admit certain expert declarations and other evidence regarding Jeang's client trust accounts. Counsel for Zhang and Daly argued Jeang engaged in "thievery, fraud, and malfeasance"; asked for compensatory damages of $2,531,296.22, plus prejudgment interest beginning on May 8, 2017 (the date Jeang closed the client trust account at Bank of America and withdrew approximately $2.5 million); and requested an award of attorneys' fees. Counsel for Jeang attended the trial; Jeang did not. Counsel for Jeang did not present any evidence, but argued Zhang and Daly presented "insufficient evidence" to support "a finding of intentional malfeasance or fraud." Other than that one challenge to the merits of the claims against Jeang, counsel for Jeang stated only that he would "just stand on [his] prior argument . . . and the current state of the evidentiary record."

The family court found there was "overwhelming evidence" Jeang committed "fraud" and "malfeasance." The court awarded Zhang and Daly $2,531,296.22 in damages and $1,651,931.50 in prejudgment interest. The court also awarded counsel for Zhang $163,441.68 and counsel for Daly $82,480.40 in attorneys' fees, as

6

well as costs under Code of Civil Procedure section 1032. The court also stated it would relieve Daly of his obligation to pay three previously imposed discovery sanctions totaling $53,749.50, and the court included that amount in the amount of attorneys' fees the court awarded Zhang against Jeang.

Counsel for Zhang submitted a proposed judgment. Counsel for Jeang objected to the proposed judgment on the grounds that Zhang had not pleaded a cause of action for fraud or malfeasance in the complaint in joinder and that the family court lacked subject matter jurisdiction to adjudicate the tort claims. The court entered the judgment on December 26, 2023, and Jeang timely appealed.

## DISCUSSION

Jeang argues (1) the trial court lacked subject matter jurisdiction to consider tort claims; (2) the complaint in joinder did not include a cause of action labeled "fraud" or "malfeasance"; (3) the trial court erred in awarding prejudgment interest because the amount of Zhang and Daly's damages was uncertain; (4) even if the court did not err in awarding prejudgment interest, the court erred in calculating the amount of prejudgment interest; (5) the court lacked jurisdiction to reconsider its prior orders imposing discovery sanctions; (6) the court erred in imposing sanctions against Jeang under Family Code section 271; and (7) the court erred in awarding attorneys' fees. Quite a number of arguments, especially from someone who did not present a defense at trial and made only one objection. Most of Jeang's arguments, however, are forfeited; the rest are meritless.

7

A. *The Family Court Had Jurisdiction To Adjudicate Zhang's Tort Claims in the Dissolution Action*

Jeang argues the family court lacked subject matter jurisdiction to adjudicate the tort claims against her. Jeang's argument, however, relies on misstatements of the record and the law.

Jeang asserts "the trial court ruled that [Zhang and Daly], as part of the subject proceedings, could only sue [Jeang] for an Accounting and for the Imposition of a Constructive Trust." But that's not what happened. As discussed, after Zhang sought permission to file a complaint in joinder, Jeang argued the family court did not have jurisdiction to hear Zhang's causes of action for fraud and conversion. For whatever reason—strategic or otherwise—Zhang withdrew those causes of action. Thus, when the family court granted Zhang's motion to file the complaint in joinder, the court never ruled on the jurisdiction issue.

Jeang relies on one case, *Sosnick v. Sosnick* (1999) 71 Cal.App.4th 1335, to support her legal argument that the family court does not have jurisdiction to adjudicate tort claims. According to Jeang, the court in *Sosnick* held "the jurisdictional limitations associated with a Family Court's adjudicatory authority . . . prevented the Family Court from hearing and deciding the wife's fraud claim against her former husband . . . ." That's not what happened in *Sosnick* either. The husband and wife in *Sosnick* did have a dissolution action in the family court. More than a year after the family court entered the final judgment in the dissolution action, the wife filed an assault and battery case—not a fraud case—against the husband. (*Id*. at pp. 1337-1338.) The husband filed a motion in the family court to consolidate the new tort case with the (no longer pending)

8

marital dissolution case.  The family court granted the husband's motion to consolidate the cases and then granted the husband's motion for summary judgment, ruling the parties' release in the dissolution action barred the wife's tort action.  (*Id*. at p. 1338.)

The court in *Sosnick* acknowledged that a party typically does not join a tort cause of action with, or plead a tort claim in, a marital dissolution proceeding, but stated that "a tort claim can be consolidated with a pending dissolution action under suitable circumstances." (*Sosnick v. Sosnick*, *supra*, 71 Cal.App.4th at p. 1339, italics omitted.)  The court in *Sosnick* held the family court in that case "acted outside its jurisdiction by consolidating the pending civil action with a *closed* family law matter." (*Id*. at pp. 1339-1340, italics added.)  The court explained the family court acted outside its jurisdiction in "consolidating the civil action with the dissolution action because *nothing* was pending therein.  Lacking authority to consolidate, there was no jurisdictional hook upon which the court, sitting in family law, could hang a summary judgment decision in the tort case." (*Id*. at p. 1340.)  Consolidation failed in *Sosnick* because there was no active family law matter to consolidate the tort action with; not, as Jeang claims, because the family court lacked jurisdiction to adjudicate tort claims.

In any event, a family court may, in appropriate circumstances, adjudicate claims against third parties related to a pending dissolution action.  "'[F]amily court' refers to the activities of one or more superior court judicial officers who handle litigation arising under the Family Code.  It is not a separate court with special jurisdiction, but is instead the superior court performing one of its general duties." (*In re Chantal S*. (1996) 13 Cal.4th 196, 200; see *Garcia v. Escobar*

9

(2017) 17 Cal.App.5th 267, 269.) In a proceeding for dissolution of marriage, the court has broad jurisdiction to inquire into, make orders, and render any judgment concerning the settlement of the property rights of the parties. (Fam. Code, § 2010, subd. (e); see *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 344 [family court has "'broad powers to determine and characterize community property and join third parties with an interest in such property'"]; *Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1452 [same].) Thus, the family court may, as it did here, join a party "who has in his or her possession or control or claims to own any property subject to the jurisdiction of the court in the proceeding." (Cal. Rules of Court, rule 5.24(c)(1); see Fam. Code, § 2021, subd. (a) [family "court may order that a person who claims an interest in the proceeding be joined as a party to the proceeding"].)[3]

B. *Jeang Forfeited Any Argument Based on Pleading Defects in the Complaint in Joinder*

Jeang also argues fraud and malfeasance, as the family court found, were not "properly placed at issue" at the trial. Jeang suggests she was unaware of Zhang's fraud theory, but the

---

[3] "There are sound reasons in policy why the court in an action for divorce should be permitted to adjudicate the rights of third parties in property alleged by one or both of the spouses to be community property. One of the duties of the court sitting as a court of equity in a divorce proceeding is to make an equitable distribution or award of community property, and to provide for the support of the wife. The court can scarcely make a fair distribution or allotment of parcels of community property without determining what property is community." (*Elms v. Elms* (1935) 4 Cal.2d 681, 683-684.)

record undermines any such suggestion. Although neither of the two causes of action in the complaint in joinder was labeled "fraud" or "malfeasance" (to the extent the latter is a separate cause of action), the allegations encompassed and essentially asserted that theory. Zhang alleged that Jeang "diverted, withheld, spent, [stole], misappropriated and/or otherwise converted at least $2,307,375" and that Jeang forged bank records "in a deliberate and fraudulent attempt to mislead" the parties and the court regarding the missing sale proceeds. Zhang also sought "compensatory damages for the funds diverted, converted, disposed of and/or misappropriated, according to proof," in addition to an accounting and a constructive trust.

The parties' trial briefs confirmed and gave further notice Zhang would be pursuing tort claims and seeking monetary damages against Jeang at trial. Daly cited Civil Code section 3336, which prescribes recoverable damages for conversion, and asked the family court to rule Jeang wrongfully converted approximately $2 million from Zhang and Daly. Daly also requested compensatory damages and prejudgment interest. And Zhang argued that Jeang misappropriated the sale proceeds and that Zhang was entitled to $2.5 million in compensatory damages.

Moreover, counsel for Jeang knew fraud was in play at the trial. Counsel for Jeang's only objection during the entire trial was that there was "insufficient evidence in the record for a finding of intentional malfeasance or fraud at this point."[4] Thus,

---

[4] Counsel for Jeang cited *Ferrick v. Santa Clara University* (2014) 231 Cal.App.4th 1337. *Ferrick*, however, was an appeal from a judgment entered after an order sustaining a demurrer

11

rather than objecting fraud was not at issue in the trial, counsel for Jeang argued the merits of a fraud cause of action and that Zhang had not met her burden of proof on the element of intent. Jeang forfeited any objection that the complaint in joinder did not include a fraud claim or had any other defect. "'"Where the parties try the case on the assumption that . . . [an] issue . . . [is] raised by the pleadings, . . . neither party can change this theory for the purpose of review on appeal."'" (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48-49; see *Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1041 [same].) And for good reason. Had the issue been called to the family court's attention at trial, Zhang could have requested to amend the pleadings to conform to proof and cured any defect. (See, e.g., *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378 ["'amendments at trial to conform to proof, "if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation"'"]; *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 909 [same].) As counsel for Jeang conceded at oral argument, Jeang's posttrial objection to the proposed judgment that the complaint in joinder did not include a cause of action for fraud was too late. (See *In re Marriage of Elali & Marchoud* (2022) 79 Cal.App.5th 668, 682 [purpose of the forfeiture "rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected"]; *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 ["It is unfair to the trial judge and the

---

without leave to amend on a cause of action for wrongful termination in violation of public policy. (*Id.* at p. 1343.) It is unclear how *Ferrick* was relevant to the issues in the trial.

adverse party to attempt to take advantage of an alleged error or omission on appeal when the error or omission could have been, but was not, brought to the attention of the trial court in the first instance."].)

C.     *The Court Did Not Err in Awarding Prejudgment Interest*

Jeang argues the family court erred in awarding Zhang and Daly prejudgment interest.  In the alternative she argues that, even if Zhang and Daly were entitled to prejudgment interest, the court erred in calculating the amount of interest.  The court did not err in either respect.

1.     *Zhang and Daly Were Entitled to Prejudgment Interest*

Civil Code section 3287, subdivision (a), provides "a person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ."  The "'"court has no discretion, but must award prejudgment interest upon request, from the day there exists both a breach and a liquidated claim."  [Citation.]  Prejudgment interest [under section 3287(a)] is an element of damages, not a cost.'" (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1314-1315 (*Glassman*); see *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 34; *Watson Bowman Acme Corp. v. RGW Construction, Inc.* (2016) 2 Cal.App.5th 279, 293.)

"'Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of [Civil Code] section 3287 where there is essentially no dispute between the

13

parties concerning the basis of computation of damages if any are recoverable . . . .'" (*Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 958; see *In re Marriage of Wiese* (2024) 102 Cal.App.5th 917, 941.) "Generally, the certainty required of Civil Code section 3287, subdivision (a), is absent when the amounts due turn on disputed facts, but not when the dispute is confined to the rules governing liability." (*Olson v. Cory* (1983) 35 Cal.3d 390, 402; see *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 508.) "'"On appeal, we independently determine whether damages were ascertainable for purposes of the statute, absent a factual dispute as to what information was known or available to the defendant at the time."'" (*State of California v. Continental Ins. Co.* (2017) 15 Cal.App.5th 1017, 1038; see *Crane v. R. R. Crane Investment Corp.* (2022) 82 Cal.App.5th 748, 756 ["interpretation of the prejudgment interest provisions in the Civil Code are also subject to our independent review"].)

The court did not err in awarding prejudgment interest to Zhang and Daly because their damages were certain or capable of being made certain by calculation. The undisputed evidence (consisting of primarily bank records relating to Jeang's client trust accounts) was that Jeang received the sale proceeds of $4,831,125.73 in September 2015 and that Jeang made two authorized payments from those proceeds ($250,079.35 to the Internal Revenue Service and $50,000 to Zhang's first counsel), leaving a balance of $4,531,046.38 owing from Jeang to Zhang and Daly. There was also undisputed evidence counsel for Zhang received a transfer of only $1,999,750.16 from Jeang's client trust account in March 2022. Thus, Jeang still owed Zhang and Daly $2,531,296.22.

14

Jeang did not dispute the amount of damages at trial and does not on appeal.  Instead, Jeang argues Zhang and Daly's damages were not certain because counsel for Zhang and counsel for Daly presented the court with differing calculations of compensatory damages in their trial briefs.  (Actually, Zhang said the damages were $2,530,296.22, an amount very close to the $2,531,296.22 requested at trial, while Daly simply estimated Jeang absconded with more than $2 million.)  The test for recovering prejudgment interest under Civil Code section 3287, however, is not whether the *plaintiffs* know the exact amount of their damages, but "whether [the] defendant actually know[s] the amount owed or from reasonably available information could . . . have computed that amount."  (*Glassman*, *supra*, 90 Cal.App.5th at p. 1315, internal citations and quotation marks omitted; see *State of California v. Continental Ins. Co.*, *supra*, 15 Cal.App.5th at p. 1043 ["What is critical is not whether the defendant *actually* knows how much it should pay; rather, it is whether the defendant *could have* calculated how much it should pay, *if* it had known how a court would ultimately rule on the legal issues."].)  Here, even if Jeang did not keep track of the total amount she misappropriated from Zhang and Daly, Jeang could have calculated the amount without much difficulty.  As stated, Jeang held the sale proceeds in her client trust accounts and had access to the bank records from those trust accounts.  That's the same evidence Daly's financial expert used to calculate the amount of compensatory damages Zhang and Daly requested at trial.

2. *The Family Court Did Not Err in Awarding Prejudgment Interest from the Date Jeang Closed Her Client Trust Account*

As stated, the court must award prejudgment interest under Civil Code section 3287, subdivision (a), from the day there is both a breach and a liquidated claim. (*Glassman, supra,* 90 Cal.App.5th at pp. 1314-1315; see *Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, 49 ["'the trial court has no discretion—it must award prejudgment interest from the first day there exists both a breach and a liquidated claim'"].) The family court determined the breach occurred on May 8, 2017—the day Jeang closed her client trust account at Bank of America and withdrew $2,520,372.23—and awarded prejudgment interest from that date to the trial date. The court did not err.

Jeang's misappropriation of the sale proceeds began well before May 8, 2017. Jeang received the $4.8 million sale proceeds in her client trust account in September 2015. Withdrawals began almost immediately. During the last quarter of 2015, increments of $10,000 to $15,000 were transferred out of the client trust account several times a month. Cash withdrawals in similar increments occurred frequently. The cash withdrawals escalated in 2016. During some months withdrawals of exactly $10,000 occurred on a near-daily basis and, in total, $461,000 in cash was withdrawn from the client trust account in 2016. And more than $245,000 of client trust funds went to pay credit card bills in 2016. In 2017 a single transfer of $800,000 went to an unidentified checking account, and $500,000 was paid to Ideal Legal Group. Then, on May 8, 2017, the entire remaining balance of $2,520,372.23 was withdrawn and the trust account was closed. The family court reasonably concluded Jeang's

16

misappropriation of the sale proceeds occurred, at the latest, when she closed her client trust account at Bank of America.

Jeang argues the court should have awarded interest from February 18, 2022, which she says was the date the family court first ordered her to transfer the sale proceeds to counsel for Zhang. (The court actually ordered Jeang to transfer the funds on February 8, 2022, not February 18, 2022.) Jeang's refusal to transfer the funds in the face of a court order helped her conceal her misappropriation of the sale proceeds. But Jeang's liability for prejudgment interest is based on the misappropriation, which occurred several years before she defied the court's order to transfer the sale proceeds to counsel for Zhang.

> D. *The Court Did Not Err in Relieving Daly of Liability for Monetary Sanctions Relating Solely to Jeang's Litigation Conduct*

The family court awarded $53,749.50 in attorneys' fees to counsel for Zhang, effectively reassigning to Jeang liability for two discovery sanctions the court had imposed on Daly and Jeang jointly and one sanction under Family Code section 271 the court imposed against Daly. Jeang argues the court lacked authority to modify its prior sanctions order absent a motion for reconsideration under Code of Civil Procedure section 1008. Jeang is incorrect.

17

## 1. *Relevant Proceedings*

There were three sanctions orders. The court imposed the first sanction on February 8, 2022, after hearing a motion by Daly (who was represented by Jeang at the time) to quash certain deposition subpoenas served by Zhang. The court ruled that Daly's motion was procedurally deficient because it did not include a separate statement, as required under California Rules of Court, rule 3.1345(a)(5), and that Daly and Jeang made the motion in bad faith or without substantial justification, under Code of Civil Procedure sections 1987.2, subdivision (a), and 2023.010, subdivision (h). The court imposed a $4,760 sanction against Daly and Jeang, jointly and severally, payable to counsel for Zhang. Daly was not present at the February 8, 2022 hearing.

The court imposed the second sanction, in the amount of $13,711.50, on April 12, 2022. Zhang filed a request for a court order compelling production of documents and for sanctions regarding Daly's objections to Zhang's second request for production of documents. The family court granted the motion and again ruled Daly and his counsel acted without substantial justification (Code Civ. Proc., § 2031.310, subd. (h)) and misused the discovery process (*id.*, § 2030.030, subd. (a)). The court imposed the monetary sanctions jointly and severally against Daly and Jeang, also payable to counsel for Zhang. Daly was not present at the April 12, 2022 hearing either.

Finally, the court imposed the third sanction, in the amount of $35,278, on May 31, 2022 under Family Code section 271 against Daly, payable to counsel for Zhang. This sanction related to Zhang's request to modify the August 2015 stipulation, where Zhang and Daly had agreed to a limited number of distributions from the sale proceeds and that Jeang

18

would hold the sale proceeds in her client trust account.  The court ruled Daly unreasonably increased the cost of litigation by, for example, failing to provide a reasonable explanation for the disappearance of the sale proceeds, filing duplicative and meritless motions in the family court, filing meritless writ petitions in the appellate court, and refusing to transfer sale proceeds to counsel for Zhang.  Again, Daly was not present at the May 31, 2022 hearing.

In March 2023, after Jeang's litigation misconduct had come to light, the family court stated it would reconsider the three sanctions orders and invited the parties to brief the issue. Daly submitted a brief asking the court to relieve him of the obligation to pay the sanctions.  Daly submitted multiple declarations (including one admitted into evidence at the trial) stating he had been unaware of Jeang's misconduct during discovery and of Jeang's misappropriation of the sale proceeds.[5] Jeang did not file a brief.

The court decided to rule on Daly's request for relief from the sanctions awards as part of the trial on Jeang's misappropriation of funds.  At trial the court relieved Daly of the obligation to pay any of the previously imposed $53,749.50 in sanctions, finding Daly had been unaware of Jeang's misconduct. The court added $53,749.50 to the award of attorneys' fees to counsel for Zhang.

---

[5]     We augment the record on appeal to include Daly's declaration in support of his request for relief from sanctions, filed November 1, 2023.  (See Cal. Rules of Court, rule 8.155(a)(1)(A).)

19

2.    *Analysis*

Jeang argues the family court lacked jurisdiction to reconsider its prior sanctions orders because Daly's request for relief did not comply with Code of Civil Procedure section 1008. Jeang is wrong.

Code of Civil Procedures section 1008 restricts only the parties' ability to request reconsideration of a court order; it does not restrict the court's inherent jurisdiction to reconsider its prior interim rulings.  (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107 [Code of Civil Procedure 1008 limits "the parties' ability to file repetitive motions but [does] not limit the court's ability, on its own motion, to reconsider its prior interim orders so it may correct its own errors"]; *Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1000-1001 ["'trial court has inherent power to reconsider an interim ruling on its own motion,'" and this authority "'derives from the judiciary's fundamental, constitutionally mandated function to resolve specific controversies between parties'"]; *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 768 ["Even without a change of law, a trial court may exercise its inherent jurisdiction to reconsider an interim ruling."].)  That is exactly what the court did here.  Daly requested relief from the sanctions in response to the court's invitation to the parties to brief the issue.  There was nothing improper about that.

In any event, the family court imposed the first two sanctions against both Daly and Jeang under discovery statutes. To the extent the court modified its ruling to impose those two sanctions against Jeang alone, it did not err.  (See Code Civ. Proc., § 2023.030, subd. (a) [court may impose a monetary sanction against a person engaging in the misuse of the discovery

20

process, any attorney advising that conduct, or both].) Regarding the third sanction initially imposed against Daly under Family Code section 271, the court did not explain why it imposed that sanction against Jeang. We infer, however, the court relied on its original factual findings, concluded Jeang (rather than Daly) engaged in bad faith litigation conduct, and imposed the $35,278 sanction against Jeang under Code of Civil Procedure sections 128.5 or 128.7. (See *In re Marriage of Destiny & Justin C.* (2023) 87 Cal.App.5th 763, 769 ["'Under the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.'"].)

E.   *Jeang Forfeited Her Argument the Family Court Erred in Awarding Attorneys' Fees*

The judgment includes awards of attorneys' fees to counsel for Zhang and Daly. Jeang argues the court erred in awarding these fees as sanctions under Family Code section 271 because she was not a "party spouse[ ] in dissolution litigation." Jeang, however, forfeited this argument by failing to oppose the request for sanctions under section 271 or object at trial. (See *Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 856 ["'It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court.'"]; *California Union Square L.P. v. Saks & Company LLC* (2020) 50 Cal.App.5th 340, 354, fn. 6 ["forfeiture is the failure to make a timely assertion of a right . . . and is the proper term to use when referring to "'the loss of the right to raise an issue on appeal due to the failure to pursue it in the trial court"'"]; *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1496 [husband forfeited

21

his challenge to a Family Code section 271 sanction award by failing to object in family court].)

## DISPOSITION

The judgment is affirmed.  Zhang's motion to dismiss the appeal and request for judicial notice are denied.  Zhang and Daly are to recover their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER,  J.

STONE, J.